Argued February 24, affirmed March 8, rehearing denied April 5, 1927.

# SECOND NORTHWESTERN FINANCE CORPORATION *v.* GEORGE A. MANSFIELD.

(252 Pac. 400; 254 Pac. 1022.)

**Witnesses—Extent of Cross-examination is Largely Discretionary in Trial Court When Confined to Issues Joined by Pleadings.**

1. So long as it is confined to issues joined by pleadings, extent of cross-examination is largely discretionary in trial court.

**Witnesses—Permitting Cross-examination, Which Brought out Testimony Supporting Defendant's Defense, Held not Abuse of Discretion (Or. L., § 860).**

2. In suit on note by one who claimed to hold it without notice of infirmities in payee's title, permitting cross-examination which brought out testimony supporting defendant's affirmative defense that there was no consideration, and that plaintiff knew of infirmity in title, *held* not abuse of discretion, under Section 860, Or. L., permitting cross-examination as to any matter stated in direct examination or connected therewith.

1. See 28 R. C. L. 605.

**Estoppel—That Defendant Promised to Pay Note and Gave Orders on Others in Payment Did not Estop Him from Denying Liability Under Note (Or. L., § 798, subd. 4).**

3. That defendant had promised to pay note sued on, had paid interest, and had given certain orders on others relative to payment of note did not estop defendant from denying liability under note, under Section 798, subdivision 4, Or. L., relating to estoppel, where it was not shown that plaintiff had been injured or its right of action in any way jeopardized by reason of acts and representations of defendant.

**Estoppel—Estoppel Involves Element That Party Claiming Its Benefit has Been Misled to His Prejudice by Conduct of Representations of Party Claimed to be Estopped.**

4. Estoppel always involves element that party claiming its benefit has been misled to his prejudice or into an altered position by conduct or representations of party claimed to be estopped.

**Trial—Jury must Determine Credibility of Witnesses.**

5. Credibility of witnesses must be determined by jury.

**Evidence—In Suit on Note Defendant Claimed was Given With Instructions to Hold Until Corporation was Organized, Evidence That Other Parties had Given Notes Under Same Conditions, Which were Returned, Held Admissible to Show Lack of Consideration.**

6. In suit on note which defendant claimed had been given to payee with instructions to hold until corporation was organized, when stock would be issued to defendant for note, and that corporation never was organized, evidence that other parties had given notes under same conditions and for same purpose, and that those notes had been returned, *held* admissible to establish that there was no consideration for notes sued on.

**Bills and Notes—Where There was Positive Evidence That Plaintiff had Knowledge of Infirmity of Payee's Title in Note Sued on, Defendant's Liability Thereon Became Issue of Fact for Jury.**

7. In suit on note, where there was positive evidence that plaintiff had actual knowledge of infirmity of payee's title, defendant's liability on note became issue of fact about which jury was final arbiter.

ON PETITION FOR REHEARING.

**Trial—Instruction That Corporate Stock was Sufficient Consideration for Promissory Note Held Properly Refused, in View of Concession and Claim That Proposed Corporation was Never Organized.**

8. Instruction that capital stock of corporation was sufficient consideration for promissory note *held* properly refused, in view of defendant's concession and claim that note was given for stock in corporation to be thereafter organized and that proposed corpo-

4. See 10 R. C. L. 697.
5. See 28 R. C. L. 657.

ration never was organized and that note was not to be treated as an obligation until proposed corporation was organized and stock issued.

**Trial—Instructions Should not be Given on Matters not in Controversy.**

9. Instructions should not be given on matters not in controversy, since jury is likely to be confused, but should be confined to issues and given in as *plain* and *simple* language as *possible* to cover theory of parties to litigation.

---

Appeal and Error, 4 **C. J.,** p. 624, n. 26, p. 920, n. 53.
Bills and Notes, 8 **C. J.,** p. 995, n. 70, p. 1025, n. 78, p. 1060, n. 33, p. 1064, n. 79, p. 1065, n. 90.
Estoppel, 21 **C. J.,** p. 1113, n. 52, p. 1114, n. 53, p. 1135, n. 83, p. 1137, n. 84, p. 1254, n. 14, 15.
Trial, 38 **Cyc.,** p. 1518, n. 69, p. 1595, n. 1, p. 1612, n. 13, 14, p. 1613, n. 15, 16, p. 1626, n. 69.
Witnesses, 40 **Cyc.,** p. 2480, n. 59, p. 2482, n. 65, p. 2501, n. 94, p. 2507, n. 16, 17, p. 2508, n. 18 New, p. 2512, n. 43, p. 2513, n. 46.

---

From Jackson: **C. M. THOMAS,** Judge.

Department 1.

This action was instituted to collect a promissory note for the principal sum of $2,500 and interest at the rate of 6 per cent per annum and $250 alleged to be reasonable attorney's fees. The note is in the usual form in use in this state and was given to L. A. Williams and made payable at his office, 510 Pittock Block, Portland, Oregon. Plaintiff claims to have purchased same before maturity, paying therefor the sum of $2,325. The answer admits the execution of the note, denies the allegation that the note was sold by the payee to the plaintiff before maturity; denies that the plaintiff is a *bona fide* holder in due course; denies that the defendant paid the sum of $92.88 indorsed thereon as interest payment. The note was dated February 19, 1922, and indorsement of interest is to the effect that said payment is for interest to September 8, 1922. The answer denies that anything is due, and sets up for a further and affirmative defense that said note was given in exchange for a former

note given by defendant to a prospective corporation proposed to be formed as a branch of the National Bond & Mortgage Company of San Francisco, California; that said proposed corporation was being promoted as a branch of said parent corporation with headquarters at Medford, Oregon; that as a part of the process of organizing said corporation, the defendant with others at Medford gave their promissory notes to F. G. Bennett, who was then representing said parent corporation, with the understanding that the notes were to be held by said Bennett until the branch organization could be completed when the said notes were to be delivered to the parent corporation in exchange for stock to the amount of said notes; that said notes were payable to the National Bond & Mortgage Company; that said branch of said National Bond & Mortgage Company never was organized, said notes were without consideration, and never delivered so as to become an obligation against the defendant; that at the earnest solicitation of L. A. Williams, who had succeeded the said Bennett as representative of the National Bond & Mortgage Company, the defendant executed the note sued upon making it payable to said L. A. Williams instead of National Bond & Mortgage Company but upon the same conditions as the former note which was returned to defendant; that the plaintiff corporation had full knowledge and notice of all of said facts, knew that said L. A. Williams was holding said note in trust until said branch organization could be completed and had no authority or right to negotiate, sell or transfer said note until the completion of the branch organization and the delivery thereof in exchange for stock of said corporation; that plaintiff knew that defendant had received no consideration

at all for said note; that plaintiff was not a purchaser for value in good faith. Plaintiff replied denying the material allegations of the affirmative answer and set up as an affirmative reply allegations which plaintiff claims estopped the defendant from making the defense. The alleged estoppel consists of alleged promises made by the defendant to pay said note, the payment of the sum of $92.88 as interest and the giving of two orders on an agent of the defendant in McAlester, Oklahoma. The case was submitted to a jury and a verdict returned in favor of defendant. The errors assigned by plaintiff on appeal are the rulings of the court permitting certain questions to be propounded to the witness Bortzmeyer who was the president and manager of the plaintiff corporation at the time the note was negotiated and during the controversy following; the refusal to give certain instructions requested by plaintiff; denial of plaintiff's motion for a directed verdict in its favor and the entering of judgment in favor of the defendant.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. G. M. Roberts.*

For respondent there was a brief over the names of *Mr. N. W. Borden* and *Mr. W. R. Gaylord,* with an oral argument by *Mr. Gaylord.*

COSHOW, J.—1, 2. The plaintiff complains that the cross-examination of its witness Bortzmeyer was too broad. The court permitted the defendant to question said witness at length upon its conversations and transactions with said L. A. Williams which led up to the purchase of the note. Some of the questions which said witness was required to answer were

probably too remote to be proper cross-examination, applying the rule strictly. But the cross-examination as a whole called for information directly connected with the purchase of the note from Williams by plaintiff.

"The adverse party may cross-examine the witness as to any matter stated in his direct examination, or connected therewith, * * " Or. L., § 860.

*Hanson* v. *Johnson Contract Co.,* 117 Or. 541, 546 (244 Pac. 875). In *Ah Doon* v. *Smith,* 25 Or. 89, 93 (34 Pac. 1093), Mr. Justice ROBERT S. BEAN wrote:

"Under this statute, and the rule there provided, a party has no right to cross-examine a witness except as to facts and circumstances stated on his direct examination or connected therewith; but within this limitation great latitude should be allowed in conducting the examination. It should not be limited to the exact facts stated on the direct examination, but may extend to other matters which tend to limit, explain, or qualify them, or to rebut or modify any inference resulting therefrom, provided they are directly connected with the matter stated in the direct examination. It is true the party against whom a witness is called cannot, on cross-examination, go into an independent or affirmative case on his part, but must confine his examination to such facts connected with the direct examination as go to counteract so much of the case of his adversary as the direct examination tends to prove, but *the fact that evidence called forth by a legitimate cross-examination also tends to sustain some defense affords no reason why it should be excluded.* A party will not be permitted to glean out certain facts from his witness, which, without explanation, would give a false coloring to the matter about which he testifies, and then save his witness from the sifting process of a cross-examination by which the real transaction could be shown."

121 Or.—16

The language quoted is pertinent to the issues raised by plaintiff on this appeal. The cross-examination objected to was directly connected with the testimony of the witness Bortzmeyer to the effect that he had purchased the note in good faith without knowledge or notice of any infirmities therein. Defendant was not deprived of the valuable right of cross-examination because he had pleaded an affirmative defense which was supported by the testimony of the witness Bortzmeyer adduced on cross-examination. The cross-examination tended only to inquire into the circumstances of the transfer of said note from said Williams to plaintiff and matters connected directly therewith. All of which were within the issues of the pleadings. In the case of *Benson* v. *Johnson*, 85 Or. 677, 684 (165 Pac. 1001, 167 Pac. 1014), the court says:

" * * * The testimony sought to be adduced to establish the statutory fraud created by the Bulk Sales Law was irrelevant because there was no pleading to support it."

The evidence adduced in the instant case on cross-examination was not only pertinent but was also directly connected with the sale and transfer of the note by Williams to plaintiff testified to by Bortzmeyer, a witness for plaintiff. The extent of cross-examination is largely discretionary in the trial court as long as it is confined to the issues joined by the pleadings. There was no abuse of discretion in this case. A case in point is *Kenny* v. *Walker*, 29 Or. 41 (44 Pac. 501). See, also, *Speer* v. *Smith*, 83 Or. 571 (163 Pac. 979).

3. Plaintiff requested twenty-one instructions. Six of the requests were given. The substance of some of the others was given by the court in its general instructions. Most of the instructions refused re-

ferred to the issue of estoppel attempted to be raised by the plaintiff in its reply. In this connection the instructions given by the court were more favorable to plaintiff than it was entitled to. The facts alleged by plaintiff in its reply do not constitute estoppel. The facts relied upon by plaintiff as constituting estoppel is stated in its reply in the following language:

"That the defendant has from time to time promised to pay the said note and on or about September 23, 1922, paid thereon the sum of $92.88 as interest and on or about August 23, 1923, and on or about September 5th, 1923, gave two certain orders on one John T. Lie Brand of McAlester, Oklahoma, relative to the payment of said note, which said orders, however, were not accepted by the said Lie Brand and by reason thereof were of no force nor effect and by reason of his repeated promises to pay the same prior to its maturity and his payment of said interest and his giving of said orders, the said defendant is, and should be, estopped and prevented from denying his liability under and upon said promissory note and the right of the plaintiff to sue thereon."

4. The evidence on behalf of plaintiff tended to support the statement of facts quoted from the reply. It will be noticed that there is no statement to the effect that the plaintiff was injured or its right of action in any way jeopardized by reason of the acts and representations of the defendant. An estoppel always involves the element that the party claiming its benefit has been misled to his prejudice or into an altered position by the conduct or representations of the party claimed to be estopped. There is no allegation of that kind in the reply, and there is no evidence tending to prove that the plaintiff altered its position or changed its conduct in any way by reason

of the alleged promises of the defendant to pay the note or the orders given by defendant on his agent for that purpose. There is neither allegation nor evidence that the plaintiff was to any degree hindered or injured by the alleged conduct of the defendant. Estoppel *en pais* is a rule of evidence and is defined by our Code:

"Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, *and to act upon such belief,* he shall not, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." Or. L., § 798, subd. 4.

The general rule of estoppel is substantially the same: 21 C. J. 1113–1116, §§ 116, 117 and 118; *Bank of Idaho* v. *Malheur Co.,* 30 Or. 420, 427 (45 Pac. 781, 35 L. R. A. 142); *State* v. *Portland General Electric Co.,* 52 Or. 502 (95 Pac. 722, 98 Pac. 160). The acts and words relied upon as estoppel occurred long after plaintiff claims to have bought the note. There is no pretense of injury to plaintiff as a result of the conduct and promises set up.

5. The instructions requested are involved and lengthy. Those not given are not applicable to the facts in the instant case. There was evidence that the note sued upon was delivered to the payee to be held by him until a corporation should be organized and then it should be delivered to the said corporation for its value in stock thereof; that the payee had no authority or right to do anything with the note or to make any use of it until the corporation had been organized, or rather the branch of a foreign corporation with headquarters at Medford. There was positive testimony, given by the defendant himself and by a Mr. Bennett, who was interested in organizing the branch of the corporation and who is a dis-

interested witness, that Bortzmeyer, the president and active manager of the plaintiff corporation and the very person who represented the corporation in the purchase of the note, was informed before he purchased the note that it was held by the payee to be delivered to the branch corporation when it should be organized; that the payee had no authority or right to transfer the note, except for the purpose for which it was given. Plaintiff insists, because he claims the testimony of the witness Bennett was inconsistent and in some minor details contradictory to the testimony of the defendant, that there was no evidence. The credibility of the witnesses must be determined by the jury.

6. Plaintiff also complains because of some testimony on the part of both the defendant and said Bennett that other notes were given by parties at Medford under the same conditions and for the same purpose and that all those notes had been returned. We think this evidence was admissible for the purpose of establishing that there was no consideration for the note sued upon. It was necessary for the defendant to establish that fact and further in order to relieve himself of liability on the note that the plaintiff knew that to be a fact before it purchased the note. The proposed branch of the corporation was never formed or organized and nothing came of the efforts to accomplish that. There was then no consideration for the note. The witnesses were not allowed to go into detail about the other notes but simply testified about the circumstances under which the note sued upon was given. This was a part of defendant's affirmative defense. The court instructed the jury that defendant was liable on the note, notwithstanding that there was no consideration for it, unless the plaintiff knew the infirmities in the

payee's title in the note. Plaintiff's knowledge regarding that matter was practically the only issue involved in the trial.

Williams, payee of the note involved, did not attend the trial. The record does not disclose whether or not any attempt was made by either party to produce him.

7. The case of *Bank of Jordan Valley* v. *Duncan,* 105 Or. 105, 121, 122 (209 Pac. 149), is not in point because it was there held that there was no evidence that the holder of the note who purchased it before maturity for value had any knowledge or notice of the alleged infirmity in the title of the payee who transferred it to the holder. In the instant case there was positive evidence that the plaintiff had actual knowledge of the infirmity of the payee's title. Defendant's liability, therefore, became an issue of fact about which the jury was the final arbiter.

These considerations dispose of the motion for a directed verdict and require the affirmance of the judgment. It is so ordered.    AFFIRMED.

BURNETT, C. J., and McBRIDE and RAND, JJ., concur.

---

Rehearing denied April 5, 1927.

### ON PETITION FOR REHEARING.

(254 Pac. 1022.)

For the petition, *Mr. G. M. Roberts.*

*Contra, Mr. N. W. Borden* and *Mr. W. R. Gaylord.*

Plaintiff has presented a petition for rehearing claiming that this court erred in not passing specifi-

cally on the numerous assignments of error based on the Circuit Court's refusal to give instructions requested by plaintiff. Although the petition for rehearing presents no new question, yet because plaintiff so sincerely contends that said assignments of error were not considered we have deemed it proper to make the following comments on said petition:

8. First, plaintiff earnestly contends that we should have given attention to its requested instructions to the effect that stock in a corporation would be sufficient consideration for a promissory note. It recites the fact that the principal witness for the plaintiff testified that he knew the note involved was given for corporate stock. There is no pretense on the part of defendant that stock in a corporation would not be sufficient consideration for the note. On the contrary, defendant concedes that. The defense was that the note was given for stock in a corporation to be thereafter organized; that the proposed corporation never was organized; that said note was not to be used in any manner or treated as an obligation until said proposed corporation was organized and the stock issued. Defendant's contention was that because the proposed corporation never was organized, and no stock was ever issued, there was no consideration for the note. Defendant further contended that the payee of the note never had authority to negotiate the note. Defendant also contended that the president who represented the plaintiff knew all those facts before it purchased the note. In the instructions the court clearly assumed that capital stock of a corporation was a good consideration for a promissory note, and instructed the jury clearly that unless they found that the facts represented by the defendant in its answer existed, and that the plaintiff

had knowledge of those facts before purchasing the note, the plaintiff should recover. The situation is similar to this illustration: If the note had been executed by the defendant and left with the payee for the sole purpose of borrowing money from the plaintiff; if the plaintiff had knowledge of that fact but did not loan the money, and knew that the payee of the note had no authority to negotiate the note for any other purpose, the defendant would not be liable if the plaintiff purchased the note from the payee without advancing the money. If such were the state of facts, it would not be necessary for the court to instruct the jury that money would be a good consideration for a promissory note. So in the instant case it was not necessary or proper for the court to instruct the jury that capital stock of a corporation was sufficient consideration for the promissory note because that was not in controversy in the case. That corporate stock is sufficient consideration was assumed by the court and not questioned by defendant as clearly appears from the record.

9. Instructions should not be given on matters not in controversy. A jury is likely to be confused rather than informed by instructions on matters not in issue. Instructions should be confined to the issues and given in as plain and simple language as possible to cover the theory of the parties to the litigation. The petition for rehearing is denied.

REHEARING DENIED.

BURNETT, C. J., and McBRIDE and RAND, JJ., concur.