Submitted October 21, 1959, affirmed March 30, petition for
rehearing denied May 27, 1960

# STANLEY, Administrator *v*. MUELLER

350 P. 2d 880

Winslow & Winslow, Tillamook, for appellants.

Weiser, Bowles & Young, Portland, for respondent.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

WARNER, J.

This is a proceeding for a determination of the validity of the claim of the defendant, Emil Mueller, in the estate of his wife, Esther M. Mueller, deceased. It has its origin in the statement of election, filed by him in her estate pursuant to the provisions of ORS 113.050① (Oregon Laws 1949, ch 475, p 714, as amended by Oregon Laws 1951, ch 386, p. 610), and wherein

---

① ORS 113.050: "(1) The surviving spouse of a decedent domiciled in this state at the time of death shall have an election whether to take under the will of the decedent or to have and take upon distribution an undivided one-fourth interest in all the personal property of which the decedent died possessed, which interest shall be in addition to, and not in lieu of, any right of dower or curtesy or homestead.

"(2) Such undivided one-fourth interest in personal property shall be subject to a proportionate share of the debts of the decedent, the expenses of last illness, the expenses of administration and to being sold for the best interest of the estate or for the purpose of distribution and shall also be subject to the proportionate part of the estate and inheritance taxes, federal and state, respectively, that the share of the surviving spouse included in the measure of the tax bears to the total property included in the measure of the tax."

he declined to take under Mrs. Mueller's will, but in lieu to receive one-fourth of the personal property of the estate, as defined by ORS 113.050, supra.

Plaintiff Stanley is the administrator c.t.a. of Mrs. Mueller's estate. The other named plaintiffs are the legatees or the representatives of the legatees named in her will. From a decree of declaration holding defendant entitled to one-fourth of the net amount of decedent's personal estate, the plaintiffs appeal.[2]

The matters on which plaintiffs seek a declaration are summarized in the prayer of their petition, as follows, for a judgment: (a) "determining the right of the defendant under the Will of said deceased" and (b) "under the 'STATEMENT OF ELECTION' executed and filed by the defendant."

The Muellers were married in 1946. At that time, Mrs. Mueller was the owner of two dairy farms in Tillamook county, later sold by her in July, 1951, about $6,000 in government bonds, and certain items of household furniture. The defendant brought into the marriage some cash, some government bonds, and a small parcel of logged-off land. Mr. Mueller's assets had a value far less than the properties then owned by Mrs. Mueller.

Both of the Muellers had been married before. The property owned by Mrs. Mueller at the time of her

---

[2] Appeal from the first decree in this matter was before us in Stanley, Admr. v. Mueller, 211 Or 198, 315 P2d 125, wherein this court without reaching the merits, reversed the lower court for the sole reason that there was a want of necessary parties, namely, the legatees named in Mrs. Mueller's will, and remanded the case to the lower court with directions to fix a time within which the legatees might be joined. This was done in due course and thereafter, by stipulation of the parties, the record made on the first trial became the record for the second hearing, followed by a second decree, which, in substance, was like the first. By order of this court, the transcript and exhibits in the first appeal, abstracts and briefs filed in the first appeal are made a part of the record in the second appeal, hence an occasional reference in this opinion to Appellants' First Brief or Respondent's Second Brief or Appellants' Second Reply Brief, etc.

marriage to Mueller had been inherited from her former husband, Ralph Dunn. No children had been born to Mrs. Mueller during either marriage. As disclosed by the language of Mr. Mueller's will, hereinafter referred to, he had at that time four daughters and one son, all adults, born of a previous marriage or marriages.

On August 9, 1951, Mr. and Mrs. Mueller executed their respective wills, at the same time before the same witnesses, who signed as such for both wills. These were written on two sheets of paper. Mrs. Mueller's will appears first in order, occupying the first and about one-third of the second sheet, followed thereon by that of Mr. Mueller on the last page. Thus, we necessarily have before us the instrument executed by him as of that date.

Mrs. Mueller died on September 1, 1952. Her will was promptly filed and on October 22, 1952, duly admitted to probate. Neither the regularity of its admission nor its validity has ever been challenged.

Prior to July 1, 1951, Mr. and Mrs. Mueller operated as a dairy farm the two parcels of land which she had inherited from her former husband. On that date, she entered into two contracts, which Mr. Mueller did not sign, for the sale of said premises and some personal property used in conjunction with their dairy business. One parcel was so sold to Clifford W. Chambers and his wife for $32,500, payable in installments. The other was sold to Roy C. Dunn and wife for $15,000. Substantial balances were due on both contracts at the time of her death and these balances constitute the bulk of her estate.

The real estate contracts and the wills to which we have made reference were drawn by Mr. Mueller and reflect a want of skilled draftsmanship. But their

defects, except for the provision Mrs. Mueller made for her husband, are not matters of concern in this proceeding.

In June, 1947, the Muellers purchased two lots with an old dwelling thereon, located in the city of Tillamook. They took the title as tenants by the entirety and proceeded to improve and modernize the house for their convenience. They were residing in the Tillamook place at the time of Mrs. Mueller's death. It was the residence of Mr. Mueller at the time of the trial.

In general, Mrs. Mueller's will provided for the disposition of her estate in the following manner:

"Second; I give, devise and bequeath unto and as follows; (From the special savings account, in my own name, in the First National Bank, Tillamook Branch, Tillamook, Oregon, which is being built up from the payments made on the principal, in the purchasing of my two farms near Cloverdale, Oregon, by Clifford Chambers and Roy C. Dunn, the interest payments made on the same being placed in our Joint checking account.)"

This was followed by provisions for an annuity to Julia Dudley, her mother, of $50 per month, plus certain increases in the event of illness; an annuity to Oren D. Dunn, her foster son, varying from $50 per month to $75 per month; specific legacies in lump sums to Roby Sause, a niece; to Lyle Pearson, a nephew; to Dixie Dunn, a niece; Lindley R. Dunn and Lucinda Esther Dunn (described in the will as "grandchildren," but actually children of her foster son, Oren D. Dunn); Cloverdale Presbyterian Church; Tillamook Christian Church, and to the Masonic Lodge of Cloverdale. The total of these last-mentioned legacies aggregated $12,000. The residue of her estate was bequeathed

equally to the unborn children of Oren Dunn and the legatees Lindley R. Dunn, Roby Sause, Lyle Pearson and Lucinda E. Dunn. All persons in this paragraph named are parties plaintiff except Mrs. Mueller's mother, Julia Dudley, who died subsequent to the first appeal and who had previously received all payments accruing to her prior to her death.

Aside from nominating her husband, Emil Mueller, as her executor, the will names him but once as a beneficiary and in the following words:

> "To my beloved husband, Emil L. Mueller, my 1/2 interest in our home, if I predecease him, but in case of sale my 1/2 will to my Estate."

A similar provision about the home property is contained in the defendant's will in favor of his wife if she survived him.

Plaintiffs' case, speaking generally, rests upon two propositions: first, that defendant is barred from asserting any claim against the estate of Mrs. Mueller by reason of a pre-existing contract, and, secondly, if not so barred, his claim of election must fail because of his waiver of right to elect an alleged estoppel.

Turning to a consideration of plaintiffs' first proposition, we find their concept of the substance of the alleged prenuptial contract is pleaded in paragraph VI of their complaint and so far as pertinent to this appeal, it reads:

> "That plaintiff is informed and believes, and therefore alleges that prior to the marriage of the deceased and defendant, said parties entered into an agreement wherein each party solemnly agreed that all property then owned or held by each of said parties and the proceeds therefrom should always be held and owned as separate property of said parties, free and clear of any claim of the

other party and that upon death of either party that the surviving party would not take or claim, by inheritance or otherwise, any part of the property of the other; that said agreement was thereafter many times confirmed and ratified by each of said parties and on or about the 9th day of August, 1951, the deceased, Esther M. Mueller, and the defendant Emil Mueller, pursuant to and in accordance with the terms of said agreement, duly executed and published their mutual, joint and reciprocal Wills; * * *."

The part of the alleged agreement upon which plaintiffs place their greatest reliance reads: "the surviving party would not take or claim, by inheritance or otherwise, any part of the property of the other * * *." The defendant denies existence of such agreement.

Predicated upon their claim of a prenuptial agreement as barring the surviving party from taking "by inheritance or otherwise, any part of the property of the other," the plaintiffs attempt to resist defendant's election made pursuant to ORS 113.050, supra, by arguing that it is inconsistent with and contrary to the terms of the alleged contract between the Muellers.

As appellants move forward in their argument from their opening brief to their reply brief, their arguments concerning the existence of the contract, as alleged in paragraph VI of their complaint, attain less force and importance. This is evidenced, and we think correctly, by the following, found at page 2 of their first reply brief:

"The Primary Question

"Stated generally, the principal question for decision, in this Court, is as follows:

"Is defendant, Emil Mueller, entitled to take 25 per cent of the balances owing on the two

> dairy farm sales contracts entered into by decedent with Clifford Chambers and Roy Dunn after marriage of decedent and defendant?"

The same representation of the relative importance of their two principal contentions is reiterated at page 45 of their second reply brief.

We do not understand that appellants by this concession are abandoning their claim to the existence of a prenuptial contract of the kind reflected by their pleading. But we do read it as an indication that they have less reliance upon the contractual aspect of their cause than they have in barring defendant's right to make the election to take one-fourth of the personal property.

If this be their evaluation, we believe it represents a correct appraisement of their position on this appeal. We also think it justifies us in making a shorter statement in support of our conclusions concerning the so-called prenuptial contract than might otherwise seem to be in order. Moreover, we observe that the question is, under the record here, primarily one of fact and not of law.

The record discloses that the alleged agreement was oral in character and that plaintiffs' proof of its existence depends upon piecemeal conversations.

■ After a careful reading of the record, we find no evidence justifying a conclusion that an agreement employing the terms alleged by appellants was ever entered into by Mr. and Mrs. Mueller, either before or after their marriage. Our position is in complete accord with the opinion of the late and able judge who heard this matter, wherein will be found a careful and persuasive analysis of the record on the subject.

The greater part of the testimony offered by ap-

pellants is hearsay and particularly vague as to time and place. Their most knowledgeable witness was Mrs. Stasek, a close friend of Mrs. Mueller's, who, unfortunately, gave her testimony by deposition in response to written interrogatories. We find, as did the trial judge, her answers are replete with conclusions and at times contradictory and inaccurate and little even remotely suggests the existence of a prenuptial agreement between the Muellers.

That the Muellers had conferences concerning the testamentary disposition of their properties we have little doubt; yet it would appear from the testimony of Mrs. Stasek that the Muellers never did determine the final pattern of their wills until five years after their marriage.

Plaintiffs' argument frequently reiterates the theme of Mrs. Mueller's desire that the property she received from the estate of Ralph Dunn, her previous husband, "should go back to the Dunns." There can be no doubt she entertained a great affection for their foster son, Oren Dunn. This finds confirmation in the testamentary provisions made for him and his children. Plaintiffs represent that Mrs. Mueller and her husband incorporated in their agreement the provisions to which we have earlier alluded in order to insure that "the Dunns" be the beneficiaries of *all that she had received from her first marriage*. Had they done so the result would have been to bar the surviving spouse from taking by inheritance or otherwise any part of the property of the other, meaning any part of the property the Muellers had, respectively, brought into the marriage.

Aside from the fact that appellants failed to prove the existence of such agreement, the record clearly contradicts that they ever entertained such in-

tention. But, if so, that they had abandoned it sometime between its making prior to their marriage in 1946 and the execution of their wills in 1951. This is made crystal clear by the following circumstances: they took title by the entireties to their Tillamook home and purchased it with funds in their joint bank account. This bank account was initially created from the moneys derived from the government bonds which each owned at the time of their marriage. It was thereafter from time to time augmented by proceeds from the operation of the dairy farms, the earnings of Mr. Mueller as an accountant, and later by the payments made upon the Dunn and Chambers contracts. The funds in this joint account were also used to improve the Tillamook place and dairy farms. It supplied the capital employed in the purchase of a parcel of real property near Beaverton (later sold during Mrs. Mueller's lifetime), and where, again, title was taken by the entireties.

Turning to Mrs. Mueller's will, we find very positive indications that she was not as anxious as plaintiffs represent to insure that all received by her from the Dunns "should go back to the Dunns." Her testament reflects a kindly and solicitous regard for members of that family, but we note there are generous provisions for others. This is significant. Aside from the gift she made to her mother, Mrs. Dudley, $6,000 in specific legacies went to her own kin, two of whom are included as residuary legatees. We also note gifts totaling $2,000 given to the Masonic Lodge and churches. Nor can we overlook her attempted, but futile, devise of her interest in the home place to Mr. Mueller. Notwithstanding, this gift to him was valueless, as we shall later demonstrate, it is still strong evidence of her desire and intention that he share in the property received from her prior husband.

There is no preponderance of evidence tending to prove the existence of the contract alleged in plaintiffs' complaint. At the most, their wills, if they can be said to evidence the existence of any agreement between them, only imply a denial of any participation by members of their respective families in the property of the other. There is no evidence of an intent on the part of either party to this marriage to exclude each other from such benefits as the survivor might otherwise be legally entitled to claim in their respective estates.

If it had been Mrs. Mueller's design to deprive her husband of any curtesy or other statutory right conferred on him as a surviving spouse, she could have easily accomplished it by an appropriate provision putting him to an election to take under the will or to take such an interest in her property as the law otherwise gives him.

This brings us to a consideration of plaintiffs' second proposition, i.e., if we find no preexisting contract barring Mr. Mueller from taking any part of his wife's estate, we must necessarily find his election under ORS 113.050, supra, failing because of his waivers of the right to so elect. But we do not so find.

They advance five items of conduct on Mr. Mueller's part which they assert evidences waiver.

But before we address ourselves to the questions of waiver as raised by plaintiffs, we deem it in order to make some general observations on the subject in its reference to wills.

■ It is settled law that a waiver of a legal right results only when there is both full knowledge of all the facts and the existence of the right of election coupled with an intention to relinquish it. *Iltz v. Krieger,* 104 Or 59, 72, 202 P 409, 206 P 550; *Ferguson v. Holborn,*

106 Or 566, 573, 211 P 953; *Hansen v. Oregon Humane Soc.*, 142 Or 104, 115, 18 P2d 1036.

> "* * * Courts of equity have never laid down any rule determining for all cases what conduct shall amount to an implied election, but each case must depend in great measure upon its own circumstances. The following rules, however, have been fairly settled by the courts as guides in determining the general question. To raise an inference of election from the party's conduct merely, it must appear that he knew of *his right to elect,* and not merely of the instrument giving such right, and that he had full knowledge of all the facts concerning the properties. As an election is necessarily a definite choice by the party to take one of the properties and to reject the other, his conduct, in order that an election may be inferred, must be done with an intention to elect, and *must show such an intention.* The intention, however, may be inferred from a series of unequivocal acts." 2 Pomeroy, Equity Jurisprudence (5th ed), 452-3 § 515.

In order of presentation, the plaintiffs claim as their first item disclosing an election on the part of Mr. Mueller his "acceptance of the bequest * * * of the home, together with the furnishings." This suggests an acceptance of both real and personal property under the will.

We have earlier observed that Mrs. Mueller made but one provision in her will for Mr. Mueller, the one wherein she gives him "my 1/2 interest in our home, if I predecease him." If she, in fact, owned such an interest at the time of her death, then his acceptance of the devise might invalidate such election, provided it was made with a knowledge of his statutory rights and with an intention to waive such rights.

■ It will also be recalled that the Muellers took title to the home place in the city of Tillamook as ten-

ants by the entirety. By operation of law, Mr. Mueller, as the surviving spouse, was vested with the entire title as the sole owner (*Oliver v. Wright,* 47 Or 322, 326, 83 P 870), thus rendering as a nullity any attempted testamentary provisions of contrary design. By implication plaintiffs concede such result, for they argue that by a parol agreement the Muellers effected a destruction of the entirety estate *by a partition* made before signing their wills and were, therefore, tenants in common at the time of Mrs. Mueller's death. Thus, plaintiffs attempt to circumvent the claim of Mr. Mueller as the surviving spouse in order to give vitality and substance to Mrs. Mueller's so-called bequest to her husband of "my 1/2 interest in our home."

Assuming arguendo that such an oral agreement had been made by the Muellers, it was, nevertheless, of no legal force and effect and left them as before and as of the time of Mrs. Mueller's death the owners of the home place as tenants by the entirety with Mr. Mueller succeeding to the sole ownership of the fee on Mrs. Mueller's demise.

■■ Partition is a species of legal division of real property reserved to two or more persons who own the property as coparceners, joint tenants or tenants in common. 68 CJS 40, Partition § 28. The following authorities hold that there can be no partition of a tenancy by the entireties either on the suit of a creditor of one of the tenants or by action on the part of one of the married parties during the lifetime of the marriage relationship. Freeman, Cotenancy and Partition (2d ed), 137 § 71; 1 Schouler, Domestic Relations (6th ed), 590 § 569; 4 Thompson, Real Property, 332, n 40, § 1803; 2 Tiffany, Law of Real Property (3d ed), 235, n 6, § 436; II Casner, American Law of Property, 100, n 19, § 6.22; 68 CJS, supra, 40, 41, § 28, and cases there

cited. The foregoing rules prevail in this jurisdiction. *Schafer v. Schafer,* 122 Or 620, 626, 629, 260 P 206, 59 ALR 707. The same fundamental principle finds recognition in ORS 105.205, which limits the right to seek a judicial partition to persons who hold as tenants in common.

The reason for the rule is found in the peculiar character of an entirety estate which is a "single title representing the whole interest in the land" (*Brownley v. Lincoln County,* 218 Or 7, 343 P2d 529 at 531), and consequently incapable of partition while it exists as such a title.

> "* * * While the tenancy by the entireties continues, no partition can be made, but after the tenancy has been converted into a tenancy in common by a destruction of its peculiar and essential unity of persons it may like other tenancies in common be partitioned. * * *" *Schafer v. Schafer,* supra (122 Or at 626).

It is this concept of the entirety title as a single ownership which requires first the destruction of such title and in lieu thereof the creation of an estate which, unlike the entirety, is susceptible of partition. The most common form of partitional estate is, of course, a tenancy in common.

■ It is evident that the plaintiffs employ the wrong word when they refer to a "partition" of the entirety estate. Assuming the alleged agreement between the Muellers has the substance plaintiffs claim for it, it would be merely a severance of the unity of the entirety estate into a tenancy in common, leaving each an undivided interest in the whole, and not as owners in severalty of separate parts of the whole, the legal consequence of a partition.

■ However, an estate by the entirety may be severed, i.e., converted into a tenancy in common, by an agreement between the husband and wife that each shall thereafter hold an undivided share in the land. The parties may, of course, go further and create severable interests by partition.

■ Inasmuch as the conversion of the estate from that of one by the entirety into a tenancy in common involves the rearrangement of title between the owners of the entirety estate, the statute of frauds would require either a writing or acts sufficient to take the case out of the statute.

■ The requirements of the statute of frauds were not satisfied in the instant case. The alleged oral agreement was not sufficient to effect either a severance or a partition of the estate. Furthermore, there was not sufficient conduct establishing part performance to take the case out of the statute. It follows that Mrs. Mueller's will, which purported to dispose of an interest in the estate, could have no effect, the entire estate having passed by operation of law before the will could take effect. *Johnson v. Hicks,* 231 Ind 353, 108 NE2d 129 (1952); *Ashbaugh v. Ashbaugh,* 273 Mo 353, 201 SW 72 (1918). See Atkinson, Wills (2d ed), §§ 27, 28; 1 Page, Wills, § 204.

■ Even if we were disposed to accept plaintiffs' argument that the Muellers had effected a valid title as tenants in common, Mr. Mueller's continuance in possession of the home place after his wife's death would not, standing alone, be sufficient evidence of possession under the alleged severance to indicate an election to accept the bequest of the other half interest. As a tenant in common, he was entitled to retain possession of the whole estate. 86 CJS 383, Tenancy in Common § 25. He would also be entitled to posses-

sion in such circumstances under the provisions of ORS 116.005 and 116.010.

■ Plaintiffs seek to invoke an estoppel against defendant predicated upon the alleged effort of the Muellers to destroy their tenancy by the entirety in the Tillamook home place. This they do on the supposition that by words or conduct Mr. Mueller led Mrs. Mueller to believe he acquiesced in the transaction and in reliance she altered her position, thereby estopping Mr. Mueller from repudiating it to the prejudice of herself or others.

In *Second Northwestern Finance Corp. v. Mansfield,* 121 Or 236, 252 P 400, 254 P 1022, we said at p 243:

> "* * * An estoppel always involves the element that the party claiming its benefit has been misled to his prejudice or into an altered position by the conduct or representations of the party claimed to be estopped. * * *"

There are several reasons which impel us to reject the claim of estoppel. The idea for this attempted severance originated with Mrs. Mueller. This is made manifest from the testimony of Mr. Mueller, from which plaintiffs obtained their only evidence of the alleged transaction. But there is nothing in the record to support the idea that by so doing she in any way altered her position or was misled to her prejudice or the prejudice of any third person.

If it were true that the Muellers had effectuated a valid severance, leaving each as a tenant in common, as a practical propostion it would not have resulted in any diminution of the estate of the surviving spouse, provided after the severance neither had disposed of their respective aliquot parts during the lifetime of

the other. Had the severance been made under the pattern of the Muellers' wills the survivor by receiving the half interest of the other would then become sole owner of the entire fee, the identical ownership he or she would have enjoyed had the title by the entirety been left intact. In short, Mrs. Mueller lost nothing or gained nothing by the alleged conversion from an estate by the entirety to a tenancy in common.

As we have already said, plaintiffs' first item of alleged waiver also advances the contention that in addition to accepting a bequest of the home, Mr. Mueller accepted "personal property under the will." Mrs. Mueller's will makes no specific gift of household furnishings in whole or in part to Mr. Mueller nor to any other person. Such personal property as she may have owned at the time of her death is disposed of by the residuary clause to "sons or daughters of Oren D. Dunn" born after August 9, 1951, and five of the other plaintiff legatees, in equal shares, "except for some personal things and furniture, disposition of these personal effects, being listed on an attached sheet or sheets of paper, with my signature attached." We are informed by the briefs that the sheet or sheets evidencing such disposition of her personalty were nonexistent when the will was admitted to probate.

Plaintiffs' proof of the existence of these articles owned by Mrs. Mueller prior to her marriage to the defendant comes from Ann Pearson, a sister of Mrs. Mueller, who testified that they consisted of a sewing machine, "maybe" a bed and dresser, a full bedroom set, a refrigerator, some silverware, dishes, cooking utensils, a piano, end tables and lamps and bedding and linens. There is no positive evidence as to what if anything remained after the six years of her marriage to Mr. Mueller or what its value might be. Mr. Mueller

testifies that many items of furniture and furnishings previously owned by Mrs. Mueller were traded or given away or replaced in whole or in part by purchase with their jointly-held funds.

The complete files in the estate of Esther M. Mueller are not before us. We only have the inventory and appraisement, filed on January 6, 1953, Mr. Mueller's "First Accounting," filed July 8, 1953, and his "Declaration of Election," filed December 18, 1952.

We are told that in a separate proceeding, Mr. Mueller was removed as executor and we learn from the complaint in the instant matter that the plaintiff Clarence B. Stanley was appointed administrator c.t.a., in his stead. When Mr. Stanley qualified for that office is not indicated by the record here, but evidently sometime subsequent to July 8, 1953 (the date of Mr. Mueller's first report), and before February 15, 1955 (the date the complaint was filed in the matter at bar).

Our examination of the inventory of Mrs. Mueller's property, prepared by Mr. Mueller, does not include the listing of household furniture or furnishings of any kind. If there was any sound ground for believing that property belonging to Mrs. Mueller at the time of her death was omitted, then it was the duty of Mr. Stanley to seek it out and recover possession and thereafter have it appraised by a supplemental appraisement. If Mr. Mueller or any other person refused to relinquish possession of it under claim of right, then it was the administrator's duty to litigate their claim of title in a proper forum if he was not convinced that such adverse claim was a valid one. We cannot perform that function here and we decline to speculate on what may be Mr. Mueller's assertion of right to retain and use any part thereof. Certainly, he could not

lay claim to it under the will, for if it is properly a part of Mrs. Mueller's estate, it passes under the residuary clause to the legatees there named and he is not one of them. So far as we know, he may claim this property by gift or purchase or, perchance, under an already implemented order of the court made under ORS 116.010, setting apart to him as his own all personal property of the estate exempt from execution. We note that in assailing Mr. Mueller's possession of the various items of furniture and furnishings, plaintiffs state: "There is no evidence that there was any estate of entirety in the furniture." Certainly not, nor could there be, for it has been well and long established that there are no estates by the entireties in personal property in this state. See *Panushka v. Panushka,* 221 Or 145, 349 P2d 45 (decided February 17, 1960), and Oregon cases there cited. It is obvious, however, that unless his right to possession rests upon some such superior right to be determined in some proceeding other than this, he cannot withhold the same from Mrs. Mueller's estate as something additional to what he may claim under his statement of election.

Taken in context these acts bespeak a confusion as to his legal rights rather than an intention to relinquish the rights of a surviving spouse granted him by ORS 113.050, supra. If his possession of such personalty is made in good faith, under an honest belief of having some right to retain it, apart from the will, we cannot say that it militates as a waiver of his privilege to claim the rights accruing under his statutory election.

The defendant's knowledge of the law was, to put it charitably, vague and limited. This is made evident by an examination of the contracts he drew for the sale of his wife's dairy farms and the wills he drew

for himself and Mrs. Mueller. It appears that the limitations of his legal knowledge were brought home to him subsequent to his wife's death, for on January 8, 1953, he filed a petition for a declaratory judgment which particularly prayed for a determination of rights arising under the will.

Plaintiffs, as further evidence of defendant's waiver of his right to the statutory election, point to "the fact that Emil Mueller presented the will for probate, was appointed and qualified as the executor and proceeded to administer and carry out the will, together with his undenied statement 'he was going to administer the will the best he could, as near as he could the way it was written.' " Related to this, is their further assertion as a disqualifying circumstance of "the fact that [he] brought up proceedings for declaratory judgment to have decedent's will construed * * * ."⑨

We find in *Ferguson v. Holborn,* supra (106 Or 566), a satisfying answer to plaintiffs' foregoing contentions. There, we said at page 573:

"The conduct of Anna Ferguson in qualifying as executrix and bringing the suit for the construction of the will did not amount to an election to take under the will only. Inference of election from conduct can only take place when the party has full knowledge of all the facts, and of her right of election: *In re Iltz's Estate,* 104 Or. 59 (202 Pac. 409, 206 Pac. 550); *In re Smith's Estate,* 108 Cal. 115 (40 Pac. 1037); *Hodgkins v. Ashby,* 56 Colo. 553 (139 Pac. 538, 542)."

See, also, *McCrary v. Biggers,* 46 Or 465, 470, 81 P 356, where service by surviving spouse, as executor

---

⑨ We know nothing concerning this case or the final result except what may be gleaned from a copy of the complaint introduced by the appellants here, and wherein Emil L. Mueller, as executor, is plaintiff and the plaintiffs here and Julia Dudley et al. are defendants.

of his wife's estate, was not construed as an election, and Annos 82 ALR 1536.

■ Plaintiffs also contend in support of their claim of waiver on the part of defendant that "Mr. Mueller attempted to claim, under the provisions of the will" interest accruing under the farm sale contracts. The evidence upon which they rely does not support this broad assertion. No provision of the will directly or indirectly indicates or suggests that Mrs. Mueller had any desire or intention that Mr. Mueller, as a legatee, enjoy as his own the interest accruing on these sales contracts. Any claim he may have thought he had thereto would have to rest upon some transaction between the Muellers prior to her death. He does not in this matter attempt to assert such a right of ownership. Indeed, his "First Accounting," as executor, indicates that he treated such interest payments received by him while executor as of doubtful personal ownership, for in that document he itemizes that income under a heading "Held in reserve pending court determination acct." This device and his further statement in that account concerning this income do not justify the representation by appellants that defendant claims this interest therein as a legatee under Mrs. Mueller's will. What we hereinafter say concerning the election to take a percentage of the personal property demonstrates that his election will not in any event support a claim of ownership in any particular items of personal property which, in fact, constitute the residue of his wife's estate.

The appellants make reference to other matters as evidence of an acceptance of benefits as defeating his right to make an election but deeming them of no merit, we pass them without further comment.

Plaintiffs also represent and strenuously argue that

the doctrine of equitable conversion is inapplicable to the sales contracts with Chambers and Dunn and, therefore, these contracts constitute no part of the personal property of Mrs. Mueller's estate.

Their position is epitomized in the following statement taken from their brief:

"The rule that is universally accepted is that, under a contract of sale, 'in order to work a (equitable) conversion, the contract must be valid and binding, free from inequitable imperfection, and such as a court of equity will specifically enforce against an unwilling purchaser.'"

The quoted portion, which is a part of the foregoing statement, is from 18 CJS 50, Conversion § 9b, and is incomplete in that it deletes the very significant words which follow the semicolon after the word "purchaser." The omitted phrase, which gives balance and substance to the thought there expressed, reads:

"* * *; but such enforceability does not refer to events in the nature of conditions the performance of which is not yet due."

To the same tenor as the completed statement from 18 CJS, supra, see 19 Am Jur 11, Equitable Conversion § 11.

The issues raised by the pleadings do not compel us to make any determination concerning the rights and remedies of the vendor or the vendees or their respective successors under the contracts made with Mrs. Mueller which may arise from the fact that Mr. Mueller did not join her as a cosignee. It is sufficient for us to observe that plaintiffs' assertion that "a real estate contract of sale, by an owner who is married, will not be specifically enforced, in equity, when the spouse of the owner is not a party to the contract" exceeds the bounds of legal exactitude.

■ The foregoing conclusion is demonstrated by the four Oregon cases plaintiffs cite in support of that proposition, wherein it will be found that equity will not deny the remedy of specific performance if the vendees are willing to accept a deed from the vendor, or his successors, subject to any then outstanding interest of vendor's surviving spouse and such willingness on the part of the vendee is indicated prior to the entry of the decree in such a suit. The cases so cited by plaintiffs and on which we also rely are as follows: *Kuratli v. Jackson,* 60 Or 203, 209, 212, 118 P 192, 118 P 1013; *Leo v. Deitz,* 63 Or 261, 263, 127 P 550; *Woolsey v. Draper,* 103 Or 103, 106, 201 P 730, 203 P 582; and *Weatherford v. Weatherford,* 199 Or 290, 303, 257 P2d 263, 260 P2d 1097 (1953). See, also, 81 CJS 451, 454, Specific Performance § 21, and 49 Am Jur 123, Specific Performance § 105.

These contracts indicate there may be a long period of installment payments and it appears to us that it may take some time after the closing of the estate before it can be successfully claimed that either contract has been fully executed. What may happen then we cannot now foresee, nor do we know what claims they may then legitimately make in defense to any assertion of curtesy on the part of Mr. Mueller if he should then assert such claim. In short, we cannot find, at this time and in this proceeding any inequitable imperfections in the contracts which as of the date of Mrs. Mueller's death would bar specific performance if sought by the vendors or vendees.

■ It follows under the full statement of the rule relied upon by the plaintiffs that we know of no reason why the contracts are not subject to the doctrine of equitable conversion so long recognized and applied in this jurisdiction. *Panushka v. Panushka,* supra, and

cases there cited. The interest of Mrs. Mueller's estate in said contracts is, therefore, personalty in the hands of her representative. *Re Estate of Denning,* 112 Or 621, 626, 628, 229 P 912.

Some loose phrasing which we find in the briefs moves us to clarify what may seem to be an erroneous concept of what accrues to a party exercising election rights under ORS 113.050, supra. For example, we note the statement "that the court erred in not  *  *  * decreeing that defendant was not entitled to twenty-five per cent interest in the amounts unpaid on real estate contracts  *  *  *"; and one referring to a determination of "what rights, if any, the defendant has in and to said farm real estate contracts,  *  *  * and the proceeds therefrom."

■ Under the election made, the party exercising that privilege, takes not 25 per cent or $\frac{1}{4}$ interest in any particular item, kind or species of the decedent's personal property. Rather, he takes an "undivided one-fourth interest in personal property" remaining after the payment of "the debts of the decedent, the expenses of  *  *  * administration" which property is subject "to being sold for the best interest of the estate or for the purpose of distribution" and further subject to its proportionate part of "estate and inheritance taxes, federal and state." ORS 113.050(2), supra. In summary, the election gives to the claimant 25 per cent of the net value of the personal property remaining after the estate has met all of its obligations as to debts and administrative expense, less such amount as may be properly levied against the share for the taxes above mentioned.

■ It may develop that when this point in the administration of Mrs. Mueller's estate is reached, the only assets remaining will be, as suggested by the

briefs, the two contracts of sale which Mrs. Mueller made with the Chambers and the Dunns, as vendees. But the defendant, in that event, acquires no specific interest therein, but, rather, in the proceeds therefrom, if it becomes necessary for the administrator c.t.a. to sell the same for the purposes of distribution. "Where this class of property [personal property not readily susceptible of equal division], belonging to a decedent's estate, is to be distributed to several persons, reason establishes the rule that such assets should be converted into money in order that the proportional allotment might be facilitated." *Morrison's Estate,* 48 Or 612, 616, 87 P 1043. In the interim, before the closing of the estate, any payments of interest or principal made by the vendees will accrue first to the needs of the estate.

The defendant in his last brief closes with the request that the decree be modified to permit him "to elect between his curtesy interest, if such there be, and the statutory one-fourth."

We assume that the defendant has reference to the following paragraphs of the decree:

## "IV.

"That the defendant, Emil Mueller does not have the right to elect whether to claim his curtesy right or twenty-five per cent of the sales price due on the farms.

## "V.

"That if the defendant, Emil Mueller, has a curtesy right he is entitled to that as to the farms; and if he has no curtesy right, he is entitled to the twenty-five per cent of the balance due on the sales price by virtue of its being personal property of the decedent."

The defendant has not cross-appealed in this matter from the decree or any part thereof. Under the previous holdings of this court, he cannot now be heard to question the sufficiency of the decree, but must be deemed satisfied with it. *McCoy v. Crossfield,* 54 Or 591, 592, 104 P 423; *Levene et ux. v. City of Salem,* 191 Or 182, 193, 229 P2d 255, and cases cited. But even if such decree were erroneous in the matters referred to by defendant, the only method for the determination of such questions is by appeal to this court. *Carlson v. Bankers Discount Corp.,* 107 Or 686, 699, 215 P 986. We, therefore, decline to express an opinion as to the proposition which the court advances in the foregoing paragraphs IV and V.

The decree of the circuit court is affirmed.