Submitted on the record and briefs March 23, affirmed in part
and remanded in part July 6, 1983

In the Matter of the Estate of
Myrel R. Plue, Deceased.

PLUE,
*Appellant, Cross-Respondent,*

*v.*

HILL et al,
*Respondents, Cross-Appellants.*

(30964; CA A26611)

666 P2d 835

Norman K. Winslow, Salem, filed the briefs for appellant, cross-respondent.

Thomas B. Brand, Salem, filed the briefs for respondents, cross-appellants.

Before Joseph, Chief Judge, and Warden and Warren, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

 This case involves, principally, a surviving spouse's election against a will under ORS 114.105. Myrel Plue died testate in June, 1979, appointing as co-personal representatives her two daughters by a previous marriage. Her surviving spouse chose to elect against the will. The personal representatives opposed the election, and an order was entered upholding Mr. Plue's right to an elective share. Mr. Plue objected to the final accounting and petition for distribution and appeals from the order approving the final account and the decree of distribution. The personal representatives cross-appeal from the order sustaining Mr. Plue's right to an elective share[1] and also from the order approving the final account and the decree of distribution.

The personal representatives argue that Mr. Plue was barred from electing against the will by virtue of a "marriage agreement" that apparently conforms to the disposition of property under the will. Their position seems to be that Mr. Plue agreed not to elect against the will and is bound by this agreement. The "agreement" was neither dated nor signed, but the probate court correctly found that it was written *after* the death of Mrs. Plue. Among other things, it says:

> "It was agreed that in the event of [Mrs. Plue's] death, the house would go to her daughters.

---

[1] Mr. Plue moved to dismiss the estate's appeal, and the motion was denied. In his reply brief, he renews that motion on two grounds. We understand the first to be that the cross-appeal was not timely filed, because the order on the elective share was entered nearly two and a half years before the notice of cross-appeal was filed. However, it is the decree of final distribution which ultimately settles the distribution of an estate. ORS 116.113(1)(b),(e). An appeal before entry of the order approving the final account would have been premature. *See Harrington v. Thomas,* 63 Or App 292, 663 P2d 1298 (1983).

We understand the second argument to be that the personal representatives are barred from appealing on the basis of estoppel or waiver. Mr. Plue points out that the final account states that there was no appeal from the order granting him an elective share and that the attorney for the estate stated in colloquy at the hearing on the objections to the final account that there would be no appeal from the order. He claims that the inheritance tax returns filed by the personal representatives and his objections to the final account were premised on his successful election against the will. However, they cannot have waived their right to appeal from the order approving the final account and the decree of final distribution, which is the final appealable disposition of the estate. ORS 19.010; 116.113; 116.123. The motion to dismiss the cross-appeal is denied.

"* * * These stocks were always considered hers and were made into a joint holding as were those that Mr. Plue purchased which were held in joint tenancy so that if either one died, the other one would be able to sell them and cash the dividend checks and do whatever was needed.

"All through our married life we lived by this agreement. * * *"

■ Mr. Plue sent the "agreement," with a letter, to the estate's attorney about one month after Mrs. Plue's death. In the letter, he stated:

"I have no fault to find with the will and am glad that Myrel got it straightened out as well as she did. The Will is one thing but Myrel left a list of items for almost everyone * * *.

"To understand this marriage and the estate involved in it it is necessary to look into a marriage contract entered into at the time we were engaged. I am enclosing a copy for your files. I am prepared to present evidence that such a contract did exist."

"* * * * *

"I trust that what I have related to you in this letter and its enclosures will help you in closing out the Estate without the necessity of dragging it through the Probate Court for months."

ORS 114.115 provides:

"The right of the surviving spouse to elect under ORS 114.105 may be barred by a written agreement signed by both spouses. The agreement may be entered into before or after marriage."

The personal representatives argue that the statute is a statute of frauds — that is, its purpose is to insure that the agreement has some evidence to support it and was not merely fabricated by the person to whose benefit it inures. They argue, in essence, that, because Mr. Plue furnished a copy of the "agreement" to the estate's attorney shortly after Mrs. Plue's death and admitted its existence at trial, the purpose of the statute would not be frustrated by a holding that he is bound by the "agreement." Nevertheless, the statute *expressly* requires the signature of *both* spouses to the agreement. The "agreement" in this case is not of the kind contemplated by ORS 114.115 that bars the right to elect.

The personal representatives also argue that the money in accounts that were jointly held by the Plue's passed to Mr. Plue under the will, because decedent's will specifically gave to him all her "cash and securities." They argue that, because there is no evidence as to the exact amounts Mr. Plue and decedent each contributed to the accounts, they are presumed to have contributed equal amounts and, therefore, one-half of each account should be deducted from Mr. Plue's share.

ORS 114.105(1) provides:

"If a decedent is domiciled in this state at the time of his death and dies testate, the surviving spouse of the decedent has a right to elect to take the share provided by this section. The elective share consists of one-fourth of the value of the net estate of the decedent, but the elective share shall be reduced by the value of the following property *given to the spouse under the will of the decedent:*

"(a) *Property given outright;*

"(b) The present value of the right of the surviving spouse to income or an annuity, or a right of withdrawal, from any property transferred in trust by the will that is capable of valuation with reasonable certainty without regard to the powers forfeited under subsection (2) of this section." (Emphasis supplied.)

However, ORS 708.616(1) provides:

"Sums remaining on deposit at the death of a party to a joint account belong to the surviving party as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created."

The personal representatives do not claim that there is any evidence of a "different intention," but rather that the statute "has nothing to do with probate law." On the contrary, the statute expressly applies to questions involving the ownership of funds in joint accounts when one of the parties to the account dies. The funds passed to Mr. Plue by virtue of the statute, Whatever the will might have said about their disposition is irrelevant. ORS 708.626. The probate court correctly refused to deduct the funds from the elective share.

Mr. Plue argues that inheritance taxes should not have been apportioned to his elective share. The will directed that the taxes be paid without apportionment. Nevertheless,

the personal representatives charged the elective share with the amount of inheritance taxes attributable to that share. He claims that the personal representatives could not ignore the will provision and thereby further their own interests as beneficiaries under the will.

■ The probate court held that it had no jurisdiction to decide the apportionment question. Although the Tax Court has exclusive jurisdiction to determine the *amount* of inheritance tax, ORS 118.410, and that determination involves the "apportionment" of the tax according to the size of the distributive shares, the probate court has jurisdiction to decide whether the tax *liability* will be apportioned among the persons interested in the estate. ORS 111.085(5),(6); ORS 116.313 - 116.323. Although the probate court erred in holding that it had no jurisdiction to resolve the apportionment issue, the effect of its approving the final account was to charge the elective share a prorata portion of the inheritance tax.

■■ Until 1969, an elective share was reduced by the proportionate part of the estate and inheritance taxes attributable to the share. Former ORS 113.050(2); *Stanley v. Mueller,* 222 Or 194, 220, 350 P2d 880 (1960). However, in 1969, the legislature amended the probate statutes to provide that the elective share consists of one-quarter of the "net estate," reduced by the value of certain properties and interests given to the surviving spouse under the will. ORS 114.105(1), *supra.*

ORS 111.005(23) defines "net estate" as:

> "* * * the real and personal property of a decedent, except property used for the support of his surviving spouse and children and for the payment of expenses of administration, funeral expenses, claims and taxes."

However, ORS 114.105(2) provides:

> "Except as to property applied under subsection (1) of this section to reduce the elective share, an election to take under this section *forfeits any other right to take under the will* and under the law of intestate succession. If the will would otherwise create a power of appointment in the surviving spouse, the spouse by electing to take under this section retains the power only if it is not a general power of appointment * * *. A power to pay more than the income or annuity or withdrawals, the value of which reduced the elective share under paragraph

(c) of subsection (1) of this section, or to apply additional principal or income in behalf of the electing spouse, may not be exercised in favor of the electing spouse." (Emphasis added.)

The clear purpose of the latter section is to prevent a surviving spouse who elects against a will from receiving benefits under the will in addition to the property or interests given outright. In this case, the will provision for the payment of inheritance taxes without apportionment operates to the benefit of the surviving spouse, for the residue of the estate that was left to decedent's daughters is the primary source for payment of taxes. The surviving spouse cannot elect against the will and at the same time benefit from this will provision. The taxes were properly apportioned to Mr. Plue's elective share pursuant to ORS 116.313.

■ Mr. Plue next argues that property which he received under precatory language of the will should not have been deducted from his elective share. The will stated:

> "I give, devise and bequeath all my household furniture, furnishings, equipment, jewelry, personal belongings, bric-a-brac, and personal effects other than those hereinabove bequeathed to my daughters * * *, specifically, to my daughters without restriction, but I invite my daughters to give to my husband * * * any of said household furniture, furnishings, or equipment that he needs."

The daughters gave Mr. Plue $4,855 worth of personal property. The probate court held that, because the personal representatives complied with the precatory language of the will, the property given passed under the will — that is, was "property given outright" to reduce the elective share under ORS 114.105(1). That is wrong. The property was given outright to decedent's daughters, who were free to give or not to give the property to anyone. As such, its value should not have been deducted from the elective share.

■ Mr. Plue also argues that the probate court erred in failing to treat 64 shares of AT&T stock as part of the gross estate for the purpose of computing his elective share. The court found that the stock was jointly held by decedent and Billijean Hill, one of the personal representatives, and that it passed to her by operation of law on decedent's death. Mr. Plue claims that the stock certificate was kept in the Plues' safety deposit box and that at some time it disappeared from the box

without his knowledge. He says that, after Mrs. Plue's death, Billijean "induced" AT&T to reissue a new certificate in her name alone. He claims that there is no evidence to show that decedent gave Billijean a joint interest in the stock. However, Billijean testified that her mother had given her an interest in the stock and that she had seen and endorsed to her mother jointly written dividend checks, and a letter from AT&T was introduced into evidence showing that the reissued certificate replaced one issued to decedent *and* Billijean. That is sufficient evidence that Billijean was a joint owner of the stock during the decedent's life, and we so hold.

Mr. Plue finally argues that the personal representatives should not have been awarded $1,004 for "extraordinary services." Approval of extraordinary fees for a personal representative is within the discretion of the probate court and will be disturbed only for abuse of that discretion. *Veberes v. Phillips,* 23 Or App 363, 542 P2d 928 (1975), *rev den* (1976). The probate court found that, in the light of the litigation regarding the estate, the fees were both reasonable and necessarily incurred. However, the attorney for the estate claimed only $750 for his extraordinary services in that regard, and we find nothing in the record that supports a conclusion that the personal representatives' services were any more "extraordinary" than the attorney's or that they were more valuable. The record does show that, because of the litigation, the representatives were required to devote more time than would ordinarily have been expected in an estate of this size and initial apparent complexity. We conclude that each is entitled to a fee equal to one-half the attorney's extraordinary fee, or $375.

The order approving the final account and decree of final distribution is affirmed on the cross-appeal but remanded on the appeal for modification only as to the effect on the elective share of (1) the property given appellant pursuant to the precatory language of the will and (2) reduction of the co-personal representatives' extraordinary fees to $375 each.