Argued March 29, affirmed as modified September 4, 1979

In the Matter of the Marriage of
JOHNS (now Hart),
*Appellant,*
*and*
JOHNS,
*Respondent-Cross-Appellant.*

(No. D7607-10008, CA 11366)

In the Matter of Stacey Helen Johns,
A Minor Child.
STATE EX REL JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY
and STACEY HELEN JOHNS,
*Respondents,*
JOHNS,
*Respondent-Cross-Appellant,*
*v.*
JOHNS (now Hart),
*Appellant.*

(No. 61291-61291A, CA 11366)

599 P2d 1230

Patricia Bridge Urquhart, Portland, argued the cause and filed the brief for appellant.

Michael S. Fryar, Gresham, argued the cause and filed the brief for respondent-cross-appellant.

No apperance by respondents Juvenile Department and Stacey Helen Johns.

Before Schwab, Chief Judge, and Thornton, Gillette and Campbell, Judges.

GILLETTE, J.

## GILLETTE, J.

This proceeding grows out of a custody dispute in which both parents, after a recent dissolution of marriage, seek custody of the child. Pivotal to the resolution of the custody issue is the question of the child's paternity: Midway through the custody hearing, the mother declared that respondent/father Ronald Johns (hereinafter "Johns") was not the biological father of the child. The trial judge held that the mother was estopped from raising the paternity issue. Upon petition by the attorney appointed for the child, the court made the child a ward of the juvenile court but allowed Johns to retain physical custody of the child, subject to liberal visitation privileges and a baby-sitting arrangement granted in favor of the mother. The mother appeals and assigns as error the trial court's resolution of the paternity issue and the award of custody to Johns. Johns cross-appeals from that portion of the order which establishes a baby-sitting visitation arrangement in favor of the mother. We affirm the trial court's order in all save one respect.

The parties were married in December, 1974. In July, 1976, mother filed a petition for dissolution of the marriage in which she alleged that there was one child of the marriage, Stacey Johns, born July 5, 1975. Mother sought custody of Stacey subject to reasonable visitation rights of the father and requested that Johns pay monthly child support.

A pendente lite hearing was held in August 1976. The court awarded temporary custody of Stacey to mother and imposed a $200 monthly child support obligation upon Johns. The court also ordered that a custody study be undertaken by the Multnomah County Department of Family Services. That report, which was completed in March, 1977, recommended that custody be awarded to the father.

A further hearing concerning custody was held in May, 1977. Mother had failed to maintain contact with

her attorney and was not present. Johns took a decree by default and was awarded custody of Stacey.

Mother subsequently filed a motion to set aside the decree. At the hearing on that motion on August 26, 1977, mother declared to the court that Johns was not the biological father of Stacey. The testimony indicated that mother was pregnant at the time she and Johns married and that she had been having sexual relations with Johns and another man prior to the marriage. She claimed that Johns knew she was pregnant, although not by him, and had agreed to take what she termed a "package deal". Johns denied any such knowledge and claimed that that was the first time he had ever been informed he was not Stacey's father. The trial court vacated that portion of the final decree concerning custody and ordered that blood tests be taken. Johns retained custody of Stacey.

The final hearings in this case were conducted in March, 1978. On March 3, upon motion by Johns, the court appointed an attorney for the child. The child's attorney then petitioned the Multnomah County Juvenile Court asking that Stacey be made a ward of that court on the grounds that she was threatened by conditions and circumstances detrimental to her well-being. He also moved to consolidate the juvenile proceeding with the pending domestic relations proceeding, which motion was granted.[1] The trial court heard testimony from two expert witnesses, both of whom were of the opinion that Johns was the psychological parent of the child. Mother also introduced the results of the blood-tests which indicated that Johns could not be the biological father of Stacey.

At the close of the hearing the trial judge found the child to be in circumstances which endangered or

---

[1] At the same time, Johns also petitioned the juvenile court for adoption of Stacey in the event the trial court ruled adversely on his claim of paternity, and asked for termination of mother's parental rights. This juvenile court proceeding was consolidated with the domestic relations proceeding also. The trial court subsequently denied both requests, and no appeal has been taken from that denial.

adversely affected her welfare and declared her to be a ward of the juvenile court. She further held that the mother was estopped from asserting the paternity issue. Custody of the child was awarded to Johns. The mother was granted Saturday visitation privileges and permitted to baby-sit during the weekdays.

The mother's focal concern on appeal is the award of custody to Johns.[2] That issue in turn hinges on the disposition of the paternity issue. We agree with the trial judge that mother is estopped from denying the child's paternity. The trial judge specifically found and we concur that:

> "Lennea Hart has misrepresented to this court, to the father and to the authorities of the State of Oregon the circumstances of the child's paternity. The child and Ronald Johns have relied upon her representation of his being the biological father in establishing a parent-child relationship over the past 2 1/2 years."

■   These findings are sufficient to support the creation of an estoppel. While mother insists that Johns knew at the time they were married that the child was not his, he claims otherwise. This is an issue of credibility in which the trial judge chose to disbelieve the mother, and we will defer to the trial judge's findings in view of her opportunity to actually see the two parties testify. In addition to her misrepresentations to Johns, the mother stated twice in documents before the court that Stacey was a child of the marriage. On the basis of that representation she sought and was awarded temporary child support from Johns in the amount of $200 per month. Mother cannot be allowed to assert or deny the heritage of her child as one or the other may appear to temporarily be to her advantage.

---

[2] In her assignment of error, as part of her blanket challenge to the trial court's disposition of the case, mother makes reference to the trial court's order establishing a juvenile court wardship over Stacey. However, nowhere in her brief does she address that issue or offer an argument as to the impropriety of such an order. As the source of her real concern appears to be the award of custody to Johns, we will likewise focus on that issue.

■ As to the actual decision concerning custody, the trial judge was asked to make a difficult choice between two less than perfect parents. Upon *de novo* review we agree with the trial judge that the weight of the evidence suggests that Johns is at present more suited to have custody of the child than is the mother.

Father cross-appeals from that portion of the trial court's order which authorizes the mother to baby-sit the child during weekdays. Prior to the establishment of this arrangement, Johns' parents had supplied much of the care for Stacey during weekdays. Johns argues that the baby-sitting arrangement, when coupled with the Saturday visitation privileges granted to mother, has in effect given mother physical custody of the child almost all the time despite the fact that legal custody is granted to him.

Shortly after the trial court issued the order awarding custody to Johns with baby-sitting and visitation privileges to the mother, Johns moved to strike that portion of the order authorizing the baby-sitting arrangement. A hearing was held on the baby-sitting issue in which Johns indicated that the baby-sitting arrangement was causing a severe strain on his and his new wife's relationship with Stacey and argued that the arrangement was very confusing to Stacey and detrimental to her welfare. Three expert witnesses testified on Johns's behalf that the situation was indeed confusing and potentially very harmful to the child. All three witnesses were in apparent agreement that if custody of the child were to be retained by Johns the baby-sitting arrangement should be discontinued or, at minimum, modified.

■ ■ It appears from the record that, in establishing the baby-sitting scheme, the trial judge was concerned with our opinion in *Neidert and Neidert*, 28 Or App 309, 559 P2d 515, *rev den* (1977) and was attempting to strike a balance which would provide the child with continuing contact with both parents until the issue of custody could be resolved on appeal. That issue has

[44]

been resolved and it would not be appropriate to continue the baby-sitting arrangement. It is stricken.[3] The provision for Saturday visitation in favor of the mother is retained.

Affirmed as modified.

---

[3] We do not mean to foreclose the custodial parent himself from making a determination that a baby-sitting arrangement with the mother would be workable and in the best interest of the child. Such a determination would be subject to approval by the juvenile court for so long as the child is retained as a ward of the court.