Argued and submitted July 16, affirmed December 22, 1982

WARREN,
*Respondent,*
JOECKEL,
*Respondent,*
*and*
JOECKEL,
*Appellant.*

(No. F 721)

In the Matter of the Marriage of

JOECKEL,
*Respondent,*
*and*
JOECKEL,
*Appellant.*
WARREN,
*Respondent.*

(No. D 17-592)
(CA A22433)

656 P2d 329

Michael Duane Brown, Salem, argued the cause for appellant. With him on the brief was Churchill, Leonard, Brown & Donaldson, Salem.

Angelo Gomez, Oregon Legal Services Corporation, Hillsboro, argued the cause for respondent Pamela Ellen Joeckel.

Kathleen Kelly Moore, Portland, argued the cause and filed the brief for respondent Grant Sterling Warren.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

These two cases were consolidated for trial and on appeal and involve the paternity and custody of a child born to Pamela Joeckel (wife) but conceived before her marriage to Mark Joeckel (husband). Husband appeals a decree in the paternity case declaring Grant Warren to be the father of the child and the part of the decree in the dissolution case that awarded custody of the child to wife and Warren and denied husband visitation. We affirm.

■ In early 1978, while still single, wife was living with husband; she moved out in April to rent a room in Warren's house. She established a sexual relationship with Warren, but continued also to have a sexual relationship with husband; the timing and extent of relations with each man is in dispute. At some date that summer, she moved in with her parents. The child was conceived in the summer of 1978. Wife told both men that she was pregnant, but to whom she attributed fatherhood at the time is disputed. She and husband eventually became engaged and were married in October, 1978. The child was born the following April. In August, 1979, wife and husband separated. In September, 1980, wife filed for dissolution, alleging in her petition that the child was a "child of the marriage" and asking for child support. However, in October she moved for an order requiring a blood-typing examination and amended her dissolution petition to deny that husband was the father of the child. She indicated to the court that Warren was the child's father. On its own motion the court ordered Warren to appear and show cause why he should not be joined as a party to the dissolution proceeding and be required to submit to blood-typing examinations. He appeared without counsel and stated that he did not believe that he was the father, because "there was hardly any sexual relationship at all" and that he had not had sex with wife after she moved out, which he believed was in May, 1978. The court refused to join him as a party. Shortly thereafter, in January, 1981, Warren advised the judge that he had been mistaken about the dates when he and wife had lived together and that he wished to be joined as a party in the dissolution proceeding. He had also had blood tests performed on himself and the child that did not exclude him as the father. On wife's motion the prior order

was set aside and Warren was joined in the dissolution proceeding.

After separation from husband, wife and Warren lived together with the child. Court-ordered blood tests excluded husband as the father and indicated a 94.36 percent chance of Warren's paternity. Warren filed a petition for declaration of paternity pursuant to ORS 109.125; that proceeding was consolidated with the dissolution proceeding. Warren was declared the father of the child, the marriage was dissolved, and custody of the child was awarded to wife and Warren, who were married shortly after the proceedings. No visitation rights were granted husband. He appeals, seeking a declaration of paternity as well as custody or visitation at least. He argues that Warren is barred by laches from seeking a declaration of paternity, and that wife is barred from denying husband's paternity by laches and estoppel.[1] Husband also claims that, even if he is not declared the father of the child, he should be granted custody or visitation.

■ ■ A filiation proceeding is a suit in equity, ORS 109.135; our review of the paternity determination is *de novo,* if there has not been a jury trial, ORS 19.125; *State ex rel Jones v. Workman,* 34 Or App 777, 579 P2d 1302, *rev den* 284 Or 521 (1978).

■ Husband's first assignment is that the trial court erred in holding that Warren was not barred by laches from claiming paternity. Although laches is not conclusively determined by the analogous statute of limitations, *Woodriff v. Ashcraft,* 263 Or 547, 553, 503 P2d 472 (1972), our

---

[1] Husband does not argue that ORS 109.070 is applicable:

"The paternity of a person may be established as follows:

"(1) The child of a wife cohabiting with her husband who was not impotent or sterile at the time of the conception of the child, shall be conclusively presumed to be the child of her husband, whether or not the marriage of the husband and wife may be void.

"(2) A child born in wedlock, there being no decree of separation from bed or board, shall be presumed to be the child of the mother's husband, whether or not the marriage of the husband and wife may be void. This shall be a disputable presumption."

The conclusive presumption is not applicable in this case, because husband and wife were not "cohabiting * * * at the time of the conception of the child." *Burke v. Burke,* 216 Or 691, 340 P2d 948 (1959).

decision is influenced by the fact that a filiation petition may be filed up to 10 years after the birth of the child. ORS 109.135(3). Husband has the burden to demonstrate the elements of laches, *Schreiber v. Karpow,* 47 Or App 237, 242, 614 P2d 129 (1980), *modified* 290 Or 817, 626 P2d 891 (1981); *Alexander v. Central Ore. Irrig. Dist.,* 19 Or App 452, 475, 528 P2d 582 (1974); *Hanns v. Hanns,* 246 Or 282, 305, 423 P2d 499 (1967), which are:

> " "* * * that the plaintiff against whom the defense is asserted must have had full knowledge of all the facts during the period of delay, and that the delay must have resulted in prejudicing the defendant to the extent that it would be inequitable to afford the relief sought by the delaying party.' " *Clackamas Co. Fire Protection v. Bureau of Labor,* 50 Or App 337, 342, 624 P2d 141 (1981), citing *Allied Vet. Council v. Klamath Co.,* 23 Or App 653, 661, 544 P2d 190 (1975).

The trial judge concluded that Warren moved quickly enough once he had full knowledge of all the facts. Husband argues that laches began to run when Warren was informed that wife was pregnant, rather than when he knew with certainty that he was the father. There is some authority supporting husband's position. In *Nyman v. City of Eugene,* 32 Or App 307, 574 P2d 332 (1978), *aff'd* 286 Or 47, 593 P2d 515 (1979), we stated:

> "* * * [L]aches will not begin to run until the plaintiff has actual knowledge * * * or is chargeable with knowledge she might have obtained upon inquiry if she had knowledge of facts which would have put a duty to inquire on a person of ordinary intelligence. * * *" 32 Or App at 320. (Citations omitted.)

*But see, e.g., American Timber v. Niedermeyer,* 276 Or 1135, 558 P2d 1211 (1976). Even assuming that Warren had a basis for knowledge when he was informed that wife was pregnant, we agree with the trial judge that he could not have been expected to claim paternity in the face of wife's engagement and marriage. Delay in bringing an action may be excused in some circumstances. *Fellman v. Department of Revenue,* 292 Or 569, 640 P2d 1388 (1982); *Dahlhammer and Roelfs v. Schneider Exec.,* 197 Or 478, 252 P2d 807 (1953). It was only a short time after wife filed for dissolution that Warren acknowledged the possibility of his paternity.

Regardless of when Warren is considered to have had knowledge, we do not find that husband established that the delay resulted in significant prejudice to him. He contends that prejudice exists because he accepted parental responsibilities he would not have accepted had Warren claimed paternity earlier. The credible evidence belies his contention that he accepted parental responsibility. We conclude that husband failed to sustain his burden to demonstrate sufficient prejudice to warrant application of the laches defense.

■ Husband's second assignment is that the trial court erred in failing to find wife's denial of husband's paternity barred by laches. For many of the reasons previously stated, we find that husband did not establish the defense against wife either. She amended her petition within a month of filing for dissolution. Even if the period for laches had begun before her filing, husband failed to demonstrate sufficient prejudice.

■ In the context of his laches arguments, husband raises some statutory claims. He argues that the paternity of the child was established by operation of law. He cites ORS 109.070(5), which allows parties to estabish paternity by a "joint declaration of paternity," arguing that he and wife established paternity when they both signed the child's birth certificate and named husband as the father. That subsection provides that paternity may be established

"[b]y joint declaration of paternity filed with the Bureau of Vital Statistics in the form approved by the bureau and with the fee prescribed by the bureau. The declaration shall include information sufficient to identify the child and sworn statements of the natural father and the mother that the natural father is the father of the child and that there is no legal father. * * *"

The section clearly refers to the "natural father," which husband is not. Husband also claims to have established paternity under subsection (3), which provides that paternity may be established

"[b]y the marriage of the parents of a child after his birth."

Reading the statute as a whole, it is apparent that subsections (1) and (2) *supra,* note 1, and not (3), apply to the case in which the marriage takes place before birth, as here. If we were to read the statute as husband suggests, subsections (1) and (2) would be meaningless.

■ Husband also suggests that Warren was barred from objecting in the custody proceeding by ORS 109.096 and 109.098.[2] Even if Warren would not have been entitled to notice of a custody proceeding according to the provisions of ORS 109.096, and assuming further that he therefore would be barred from objecting, he would not be

---

[2] ORS 109.096 provides in relevant part:

"(1) When the paternity of a child has not been established under ORS 109.070, the putative father shall be entitled to reasonable notice in adoption, juvenile court, or other court proceedings concerning the custody of the child if the petitioner knows, or by the exercise of ordinary diligence should have known:

"(a) That the child resided with the putative father at any time during the 60 days immediately preceding the initiation of the proceeding, or at any time since the child's birth if the child is less than 60 days old when the proceeding is initiated; or

"(b) That the putative father repeatedly has contributed or tried to contribute to the support of the child during the year immediately preceding the initiation of the proceeding, or during the period since the child's birth if the child is less than one year old when the proceeding is initiated.

"* * * * *

"(4) The putative father shall be entitled to reasonable notice in juvenile court or other court proceedings if notice of the initiation of filiation proceedings as required by ORS 109.225 was on file with the Bureau of Vital Statistics prior to the initiation of the juvenile court or other court proceedings.

"* * * * *"

ORS 109.098 provides in relevant part:

"(1) If a putative father of a child by due appearance objects to the relief sought in a proceeding of which he is entitled to notice under ORS 109.096, the court:

"(a) May abate the proceeding if filiation proceedings are pending to await the outcome of the filiation proceedings.

"(b) Shall, if filiation proceedings are not pending, inquire as to the paternity of the child, the putative father's past endeavors to fulfill his obligation to support the child and to contribute to the pregnancy-related medical expenses, the period that the child has lived with the putative father, the putative father's fitness to care for and rear the child and whether the putative father is willing to be declared the father of the child and to assume the responsibilities of a father.

"* * * * *"

barred from filing his own filiation petition. We do not read ORS 109.096 and ORS 109.098 as limitations on ORS 109.125.

■ Husband's third assignment is that the trial court erred in not finding wife estopped to deny husband's paternity. He relies on *Johns and Johns,* 42 Or App 39, 599 P2d 1230 (1979). In *Johns,* the mother petitioned for dissolution and was granted temporary custody and child support. The child had been conceived before the marriage. The mother did not appear at the custody hearing and a final decree was entered awarding custody to the husband by default. Over a year after her petition for dissolution, she moved to set aside the decree asserting that the husband was not the child's father. As in this case, blood tests excluded the husband as the child's natural father. We found that the mother was estopped from raising the issue of paternity at that time.

Our decision in *Johns* was in response to an attack on a final decree. Here, wife has merely amended her petition and did so only shortly after it was filed. Further, in *Johns* we found that the husband had relied on the mother's representations regarding the child's parentage by marrying her, believing that he was the father, by establishing a parent-child relationship and later by paying court-ordered child support. Here, the credible evidence is that husband decided to marry wife, even though he was not certain the child was his.

Husband claims that it is unnecessary to establish that he relied on wife's representations regarding the child's natural parentage. He contends, essentially, that wife represented to him that she would live with him and treat the child as theirs and that she is therefore estopped to treat the child as someone else's. Even if we were to accept that argument, we do not find that husband has established sufficient reliance to invoke estoppel. Estoppel against wife could not bar Warren from filing a filiation petition, which he has done. There was no such proceeding by the natural father involved in *Johns.*

In his fourth assignment of error, husband contends that wife is estopped under ORS 41.350(4) to deny his paternity. That section provided:

> "Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he shall not, in any litigation arising out of such declaration, act or omission, be permitted to falsify it."

It was repealed in 1981 (Or Laws 1981, ch 892, § 98), but the repeal did not become effective until 1982 (Or Laws 1981, ch 892, § 101), after the hearing in this case. However, the section codifies an existing definition of estoppel, *Finance Corporation v. Mansfield,* 121 Or 236, 244, 252 P 400, 254 P 1022 (1927), it does not provide an additional basis for husband's estoppel argument.

 Husband also raises the issues of custody and visitation. Assuming that those issues have been properly preserved for appeal,[3] we find that the trial court ruled properly in not awarding custody or visitation to husband.

Affirmed.

---

[3] After the paternity proceeding, at the outset of the dissolution proceeding, wife's attorney indicated: "[T]he parties, the Petitioner, Respondent, have agreed to all aspects of the dissolution." Husband's attorney neither objected to, nor offered, any evidence regarding custody. There was no separate assignment of error regarding custody.