Argued and submitted May 10, affirmed September 11, 1991, reconsideration denied January 15, petition for review denied February 25, 1992 (312 Or 676)

In the Matter of
Autumn Dawn Martin, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF LANE COUNTY
and Children's Services Division,
*Respondents,*

*v.*

Harry J. MARTIN,
aka Jim Martin,
*Appellant.*

(90-167; CA A66624)

816 P2d 1186

George W. Kelly, Eugene, argued the cause and filed the brief for appellant.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

This appeal is from an order of disposition in a juvenile proceeding in which the court determined that appellant was not the father of the child and, therefore, was not entitled to be a party to the proceeding; it also determined that the child is within the jurisdiction of the court and placed her with Children's Services Division (CSD). We review *de novo* and affirm.

Before this proceeding was initiated, the child was living with appellant. The allegations in the petition are directed against his treatment of the child as bringing her within the jurisdiction of the court. By the time the petition was filed, the child had been placed in a shelter home by CSD, and appellant was shown as a custodian. Appellant was given notice of the proceeding and appeared with counsel, denying the allegations of the petition. After the state filed a motion for an order requiring him to submit to a blood test, asserting that he was not the father of the child, appellant objected, contending that the court had no authority to order him to submit to a blood test, and argued that his paternity had been established under Washington law. He did not contend that the court lacked authority in this proceeding to redetermine paternity; he argued that it was not in the best interests of the child to reopen the issue.

The state filed a motion for a dispositional hearing, contending that, because appellant was not the child's father and because the mother had admitted the allegations in the petition, there was no need for a factfinding hearing. Appellant objected and requested a hearing. A hearing was held, at which the only issue was whether appellant was the child's father. Both sides adduced evidence on that issue, from which these facts appear.

In the spring of 1978, when the child was conceived, mother was unmarried and living in Reno, Nevada. Although she was living in Oregon when the child was born on December 7, 1978, she went to the nearest hospital, which was in Longview, Washington, to deliver the child. Mother then moved to Eugene with the child and lived there until the child was three or four years old. At about that time, mother and

appellant began living together, she began using appellant's last name and they contemplated marriage. In November, 1982, appellant and mother signed a declaration acknowledging that appellant was the child's biological father, filed the statement in Washington, where the birth certificate was located, and amended the birth certificate, changing the child's last name to that of appellant. In January, 1983, both signed a "Child Custody Agreement" that gave custody to appellant. By the spring of that year, they were no longer living together, but child continued living with appellant until CSD intervened in the spring of 1990 and placed her in a foster home.

Appellant and mother gave conflicting testimony concerning appellant's paternity. Appellant testified that he first met mother in February, 1978, in Reno and that they had sexual intercourse three or four times. He claims that they met by chance about three years later in Eugene, that he did not recognize her immediately, but that, after some discussion, they agreed that the child was his. On the other hand, there is evidence that appellant, a paraplegic, had admitted that he was unable to conceive children and had told the child that he might not be her real father. Mother testified that she first met appellant in Eugene when the child was three or four years old. She signed the papers acknowledging his paternity only because she felt that she could not adequately provide for the child on her own and because of anticipated Social Security benefits.

The trial court found that appellant was not the child's biological father and, therefore, was not a party in this proceeding and had no right to object to the court's disposition.[1] On appeal, appellant argues, for the first time, that the court, in reaching its determination that he was not the child's biological father, was necessarily proceeding under ORS 109.096[2] and

---

[1] After the court ruled, appellant made an oral motion to intervene on the basis that he was the "psychological father" of the child. That motion was denied, and that issue is not raised on appeal.

[2] ORS 109.096 provides, in pertinent part:

"(1) When the paternity of a child has not been established under ORS 109.070, the putative father shall be entitled to reasonable notice in adoption, juvenile court, or other court proceedings concerning the custody of the child * * *."

ORS 109.098,[3] which provide a means for determining a putative father's party status in a proceeding concerning a child's custody. He contends that those statutes apply only if paternity has *not* been established under ORS 109.070,[4] and that, because his paternity has been established under ORS 109.070(6), the court had no authority to determine paternity in this proceeding. Because that issue was not raised below, we will not consider it.

Appellant also argues that Oregon courts must give full faith and credit[5] to the Washington law, which provides:

"A man is presumed to be the natural father of a child if:

"* * * * *

---

[3] The pertinent portion of ORS 109.098 provides:

"(1) If a putative father of a child by due appearance objects to the relief sought in a proceeding of which he is entitled to notice under ORS 109.096, the court:

"* * * * *

"(b) Shall, if filiation proceedings are not pending, inquire as to the paternity of the child, * * *

"(2) If * * * the court finds:

"* * * * *

"(b) That the putative father is not the father of the child, it may grant the relief sought in the proceeding without the putative father's consent."

[4] ORS 109.070 provides:

"The paternity of a person may be established as follows:

"(1) The child of a wife cohabiting with her husband who was not impotent or sterile at the time of the conception of the child, shall be conclusively presumed to be the child of her husband, whether or not the marriage of the husband and wife may be void.

"(2) A child born in wedlock, there being no decree of separation from bed or board, shall be presumed to be the child of the mother's husband, whether or not the marriage of the husband and wife may be void. This shall be a disputable presumption.

"(3) By the marriage of the parents of a child after birth of the child.

"(4) By filiation proceedings.

"(5) By joint declaration of paternity filed with the Vital Statistics Unit of the Health Division of the Department of Human Resources in the form approved by the state registrar * * *. The Vital Statistics Unit shall prepare a new birth certificate under the procedure established by ORS 432.420.

"(6) By paternity being established or declared by other provision of law."

[5] Article IV, section 1, to the United States Constitution provides:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

"(5)  He acknowledges his paternity of the child in a writing filed with the registrar of vital statistics, who shall promptly inform the mother of the filing of the acknowledgment, and she does not dispute the acknowledgment within a reasonable time after being informed thereof, in a writing filed with the registrar of vital statistics.

"A presumption under this section may be rebutted in an appropriate action only by clear, cogent, and convincing evidence." RCW 26.26.040(5)."

The trial court held that the Washington law did not apply, because neither of the parties were residents of Washington. Assuming that Washington law does apply and that we must give full faith and credit to that law, the filing of the acknowledgment, under Washington law, created a presumption of paternity that can be rebutted "only by clear, cogent, and convincing evidence." RCW 26.26.040. We give that presumption the same credit here that a Washington court would. *Restatement (Second) Conflict of Laws* § 95, *comment f* at 285 (1971). Appellant contends that, even if the court had authority to disestablish his paternity in this proceeding, the evidence was insufficient to overcome the Washington presumption. The trial court found that mother's testimony was credible and that appellant's was not. Although we review *de novo,* we give great deference to the trial court's credibility findings. *State ex rel Juv. Dept. v. Chapman,* 53 Or App 268, 271, 631 P2d 831 (1981). Accepting mother's version of historical facts, appellant could not possibly be the father. The presumption was successfully rebutted by clear, cogent and convincing evidence.

Affirmed.