Argued and submitted June 21, affirmed December 11, 1996, petition for review denied March 4, 1997 (325 Or 45)
Appellant's petition for reconsideration allowed; previous order denying review is withdrawn; petition for review allowed May 27, 1997 (325 Or 367)
See later issue Oregon Reports

In the Matter of the Marriage of

Royal Melvin SLEEPER,
*Respondent,*

*and*

Rose Mistyca SLEEPER,
nka Rose Mistyca Madris,
*Appellant.*

(9403-62065; CA A89844)

929 P2d 1028

George W. Kelly argued the cause and filed the brief for appellant.

Philip F. Schuster, II, Dierking and Schuster, argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Haselton, Judge.

DEITS, P. J.

## DEITS, P. J.

Wife appeals a dissolution judgment that awarded husband custody of their two children. She assigns error to the trial court's award of custody. We review *de novo* and affirm.

Husband and wife were married in 1980. The children were born in 1989 and 1991. Both parties worked until 1987, excluding a period of time during 1982 that wife did not work because she was recuperating from an accident. In 1987, husband had a heart attack and stopped working. Wife continued to work except for the periods immediately following the birth of her children.

Husband is not the biological father of either of the children.[1] He had a vasectomy in 1977. After failed attempts at artificial insemination, wife had a brief relationship with another man that produced a child. About a year later, the parties separated. Wife went to California, leaving the child with husband. She had a brief relationship with another man and became pregnant with her second child. The parties then began living together again and continued to do so until August 1993. After wife left in 1993, husband was awarded temporary custody of the children.

Wife does not dispute that husband was the primary caretaker of the children throughout the marriage. He handled all daily tasks relevant to their care. Wife had sporadic contact with the children when she was not working. The parties and other witnesses gave conflicting testimony as to how much time wife spent with the children following the separation. They also disagree about why wife missed visits with the children. Husband claims that wife was often late or did not show up at all and wife contends that husband did not have the children ready or did not bring the children to visit her at the times that he was supposed to do so. Wife is now living with a man with whom she has a child and whom she intends to marry.

The trial court found that the children were born during the marriage of the parties, that husband is not the biological father of the children, and that, although husband

---

[1] The biological fathers were not parties to these proceedings.

knew that he was not the biological father, wife held him out to be the children's father since their birth. The trial court also found that husband "has established emotional ties creating a child-parent relationship with the minor children and is their psychological father having provided them with their physical and emotional needs on a daily basis since their birth." The trial court concluded that husband is

"a fit and proper person to be awarded the sole care, custody and control of the parties' minor children, and compelling reasons exist to award [husband] custody of the children herein due to [husband] being the primary caretaker of these two children since birth."

We first address the question of the appropriate standard to determine custody in this case. Wife argues that because this custody dispute involves a biological parent and a person who is not a biological parent, the "compelling reasons" standard of *Hruby and Hruby*, 304 Or 500, 516, 748 P2d 57 (1987), applies. Under that standard, "courts will deprive natural parents of the custody of their children only in order to protect the children from some compelling threat to their present or future well-being." 304 Or at 509. Wife asserts that the record fails to establish any compelling reasons why, as the biological parent, she should not be awarded custody.

Husband, on the other hand, argues that the trial court properly found that there were compelling reasons not to award custody to wife and that the record supports that conclusion. He argues alternatively, however, that the "compelling reasons" standard is not applicable because wife is estopped from denying his paternity in the context of this custody dispute. Husband asserts that the "best interests" standard for determining custody, under ORS 107.137, applies and that it is in the children's best interests here that he be awarded custody.

■■ For the reasons that we will discuss, we agree with husband that wife is estopped from asserting in this proceeding that he is not the biological father of the children. Therefore, we conclude that the "best interests" standard is applicable here. Accordingly, we need not address whether there

are compelling reasons not to award wife custody of the children.

In *Hodge and Hodge*, 84 Or App 62, 65, 733 P2d 458, *rev den* 303 Or 370 (1987), a case that involved circumstances somewhat similar to those here, we considered whether a biological parent could be estopped in a custody proceeding from asserting that the other parent was not the biological parent of a child whose custody was being disputed. In *Hodge*, the husband sought custody of a child that he alleged was his biological child. During the dissolution proceedings, the wife asserted for the first time that the husband was not the biological father of the child. We concluded that the wife was estopped from raising the question of whether the husband was the biological father as a consideration in determining custody. *Id*.

In concluding that the wife in *Hodge* was estopped, we relied on a number of factors. We found it relevant that the wife stated on the child's birth certificate that the husband was the father of the child, that she represented him as the father, and that she did not raise the issue of paternity until the father raised the issue of custody in the dissolution proceeding. 84 Or App at 65. We also found it pertinent that the father was the party who petitioned for custody and that, even though he knew it was quite likely that he was not the biological father, he testified that he loved the child and wanted custody of her. We concluded that "[h]aving allowed husband to establish the emotional ties of a child-parent relationship, wife cannot at this late date deny him and the child the benefits of the relationship." *Id*.

*Johns and Johns*, 42 Or App 39, 599 P2d 1230 (1979), also involved a similar question. In that case, the trial court found that the mother had represented to that court, to the husband and to state authorities that the husband was the father. *Id*. at 43. She did so by stating in court documents, in order to obtain child support payments from the husband, that he was the father of the child. The court also found that the child and the husband relied on that representation to establish a parent-child relationship in the two-and-one-half years preceding the hearing. *Id*. We agreed with the trial court's findings and concluded: "Mother cannot be allowed to

assert or deny the heritage of her child as one or the other may appear to temporarily be to her advantage." *Id.*

In *Warren and Joeckel*, 61 Or App 34, 41, 656 P2d 329 (1982), we concluded that the facts in that case did not support a holding that the wife was estopped from asserting that the husband was not the biological father of a child who was the subject of a custody dispute. In that case, the child was conceived prior to the husband and wife's marriage, the husband and wife separated after less than a year of marriage and before the child was a year old, and, although the wife stated that the husband was the father in her original petition for dissolution, she quickly amended the petition to deny his paternity. *Id.* at 36, 41. We concluded that the husband would have married the wife even though there was some doubt that he was the child's biological father, and therefore, the husband had not established sufficient reliance on the wife's representations to invoke estoppel. *Id.* at 41.

As in *Hodge*, husband here was the party who initiated the custody proceedings in the petition for dissolution. Wife stated in her response to the petition and counterclaim for dissolution that husband was not the biological father of her children. However, wife had not attempted to deny husband's legal paternity at any time before these proceedings. Although it appears that husband and wife knew or certainly had good reason to believe that husband was not the biological father of the children, both wife and husband represented to everyone around them that husband was the biological father. The record is inconclusive as to whether the children's birth certificates name husband as the father, but husband believed that he was so named. When asked by counsel whether his name was on the birth certificate as the father of the children, husband stated: "As far as I know, yes."

Also, unlike the husband in *Warren* who had only begun to establish a relationship with the child, husband here has a long-term, deeply involved and continuing relationship with the children. When the mother went to California, she left her daughter in the care of husband. She acknowledges that since the birth of her first child, husband has been almost singularly responsible for the children's daily care-taking in a capacity far more extensive than that of

a third-party caretaker. The children, at least until recently, believed that husband was their "father," and they still relate to him as "daddy."

The evidence is clear that husband relied on wife's representations that, even if the children were not his biological children, he was their "father." The children also relied on this representation to develop a father-child relationship with husband. Under these circumstances, we conclude that wife is estopped from asserting, for purposes of this custody dispute, that husband is not the biological father of the children.

■    In view of our conclusion that wife is estopped, the correct standard to apply here to determine the custody issue is the "best interests" of the children standard. *Hodge*, 84 Or App at 65; ORS 107.137(1). That statute sets out the following factors to be considered in determining the best interests of the children:

"(a)   The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship; and

"(d)   The abuse of one parent by the other."

No one of these factors is dispositive. ORS 107.137(2).

■■    Evaluating the emotional ties between the child and other family members involves, among other things, a consideration of which parent has been the " 'primary caretaker or is the more nurturing parent.' " *Holcomb and Holcomb*, 132 Or App 498, 503, 888 P2d 1046, *rev den* 321 Or 94 (1995), *citing Boldt and Boldt*, 104 Or App 379, 382, 801 P2d 874 (1990). "[A]ll other things being equal, small children should go with the caretaking and more nurturing parent." *Boldt*, 104 Or App at 382.

The evidence here clearly shows that husband has been the primary caretaker of the children throughout the marriage. In the year following the parties' separation and before husband filed for dissolution, husband remained in

the family home and cared for the children. He has continued in this role during temporary custody. Donald Welch, a marriage and family counselor testifying as an expert on behalf of husband, concluded that husband is the primary parent and recommended that husband continue to have custody of the children. He stated in his report that the children looked to husband for support and safety and that the "children appear to be mostly within normal limits for developmental milestones and this has been the result of [husband's] care." He noted that, although wife often mentioned husband's lack of biological ties to the children, husband placed little emphasis on this fact, placing more emphasis on his consistent role as primary parent. Welch noted that the children showed some anxiety and confusion, which he attributed, in part, to wife's behavior during these proceedings.

Dr. Peter Okulitch, a psychologist also testifying on behalf of husband as an expert, concluded, using the Minnesota multi-phasic test (MMPI), that husband's personality was "entirely healthy." He also assessed husband as having a strong sense of himself as a parent and as being pleased with how he parents. He found the interactions between husband and the children to be very healthy and that the children were very affectionate toward husband. Okulitch concluded that husband was the "psychological parent" of the children, or the adult person in their lives, which he defined as the person who provides primary parenting in such areas as teaching or protecting the children.

Dr. Russell Sardo, a psychologist called by wife as an expert, stated that wife was within the normal range on the MMPI with the possible exception that she is somewhat introverted and internalizes her anger. He found that the children were very bonded to her despite the limited contact they have had and that she could meet, at the least, the children's minimal needs. After considering the evidence concerning the first factor, we conclude that the emotional bond between husband and the children weighs heavily in husband's favor.

We next consider the "interest of the parties in and attitude toward the [children.]" ORS 107.137(1)(b). Both parents have expressed an interest in continuing their relationships with the children. There is no doubt that both parties

love the children and have a positive attitude toward the children, although wife's interest in the children and attitude toward them appears to have developed more recently, whereas husband's interest in and attitude toward the children has been continuous since their birth. The evidence supports the conclusion that husband has displayed a more active interest in the children.

■ We next evaluate the "desirability of continuing an existing relationship[.]" ORS 107.137(1)(c). We generally attempt to maintain existing positive relationships between a parent and a child. *Holcomb*, 132 Or App at 506. As discussed above, although both parents have a continuing relationship with the children, allowing the children to remain in husband's custody would involve the least disruption in their existing parental relationships.

Finally, we review the extent to which the evidence shows "abuse of one parent by the other." ORS 107.137(1)(d). Although there apparently has been some tension between the parties, evidenced by mutual family abuse restraining orders prohibiting either party from harassing the other, this factor does not weigh in favor of either party.

■ We are not bound by the trial court's findings in a child custody case. However, we do consider those findings persuasive. *Holcomb*, 132 Or App at 502. We give significant deference to the trial court's credibility findings because it is in the best position to see and hear the witnesses. *State ex rel Juv. Dept. v. Martin*, 108 Or App 647, 652, 816 P2d 1186 (1991), *rev den* 312 Or 676 (1992). The trial court here, after listening to testimony for both parties, found "without one wisp of a doubt" that husband is the primary parent of the children. It also found that, although the circumstances of the children's conceptions were unusual, husband made the best of the situation by loving and caring for the children. It stated further:

"I have not been given any evidence, any evidence, that it would be in these children's best interest to change the status quo, and the status quo is from the day of [the eldest child's] birth to this moment, that their primary caretaker and the meeter [*sic*] of their physical and emotional needs is this man who is their father, as much as anybody in this

world is anybody's father. Parenting is not having sexual intercourse. Parenting is loving and reading and being there and accepting and guiding and wiping noses and swatting bottoms and all the other things that parents have to do. And there is no evidence to the contrary in this case that that's exactly what [husband] has done.

"* * * * *

"This is a role reversal case, absolutely pure and simple. And as in most cases where there was an at-home parent and a working parent, in the absence of overwhelming considerations, that at-home, involved, fit parent is the proper custodial parent."

We agree with the trial court that it is in the best interests of the children to remain in the custody of husband. Applying the statutory factors, both parents love their children and desire a continued relationship with them. However, it is husband who has established and maintained the closest emotional ties between himself and the children by being their primary caretaker, protector, and nurturer throughout the children's lives.

Affirmed. No costs to either party.